500 F.Supp. 729 (1980)
UNITED STATES of America
v.
COMMONWEALTH OF VIRGINIA et al.
Civ. A. No. 79-1003-R.
United States District Court, E. D. Virginia, Richmond Division.
October 31, 1980.
*730 Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for plaintiff.
Kenneth W. Thorson, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendants.

MEMORANDUM
WARRINER, District Judge.
This case comes before the Court on cross motions for summary judgment. The parties agree that there are no material facts in issue. The Court will proceed to judgment on the basis of the existing record.
The plaintiff, United States of America, brings this action at the request of the National Science Foundation, an agency of the sovereign plaintiff. According to the original complaint, the action is brought to protect the pecuniary interests of the United States under its contracts with Associated Universities, Inc., the contractor whose procurement of certain property has given rise to the legal issues involved in this action.
Pursuant to contracts entered into between the National Science Foundation and AUI, AUI manages, operates, and maintains the National Radio Astronomy Observatory, an institution headquartered in Charlottesville, Virginia. The assets of the Observatory are owned by the United States and its purposes, functions, operations, and activities are those established by the National Science Foundation. The contracts between AUI and the National Science Foundation provide that, in addition to being paid a fixed fee, AUI is to be reimbursed for all allowable costs incurred incidental to its performance of the contracts.
In 1977, taxing officials of the Commonwealth of Virginia conducted a sales and use tax audit of AUI records at the National Radio Astronomy Observatory in Charlottesville. The Commonwealth initially issued a tax assessment of $345,539.33 for the period 1 December 1970 through 28 February 1977. The assessment was based on a finding that the Observatory did not qualify for an exemption either as a research and development facility or as an institution of learning, under the applicable sections of the Virginia Code.[1] AUI challenged the assessment, and upon review by the Commonwealth it was determined that the Observatory qualified for an exemption as a research facility, but not as an institution of learning. The Commonwealth's Department of Taxation thereupon issued a revised sales and use tax assessment in the amount of $8,164.92. This amount was paid by AUI under protest on 19 December 1979. The National Science Foundation reimbursed AUI for the amount paid in taxes, and the parties agree that the agency was obligated to do so under the terms of its cost-reimbursement contract.
*731 As a preliminary matter, the defendant challenges the United States' standing to bring this suit. The defendant also maintains that the Court lacks jurisdiction under 28 U.S.C. § 1341 because there is a plain, speedy, and efficient remedy in the Virginia courts and because this action does not arise under the Constitution, laws, or treaties of the United States. The Court finds, though, that the United States has a direct interest in this controversy because of its obligations under its cost-reimbursement contract. See, United States v. Dorgan, 413 F.Supp. 173, 175 (D.C.N.D.), aff'd, 429 U.S. 953, 97 S.Ct. 373, 50 L.Ed.2d 320 (1976); United States v. Arlington County, 326 F.2d 929, 931 (4th Cir. 1964). Accordingly, the United States has standing to bring this action and it need not first resort to any State remedies which may be available. Arlington County, 326 F.2d at 931.
The defendant has also requested the Court to abstain from hearing this matter pending a determination of the issues involved in the courts of the Commonwealth of Virginia. The defendant argues that resolution of the issues presented herein is more properly within the province of the Virginia courts because the sole issue is the proper interpretation and application of § 58-441.6(t) of the Code of Virginia. Abstention is an appropriate course of action generally in circumstances where a State court's determination of State law might render a federal constitutional issue moot or where abstention is otherwise necessary to prevent the disruption of State administrative proceedings. County of Allegheny v. Frank Mashuda Company, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). In this case, there has been no showing that abstention is necessary to prevent the disruption of administrative proceedings. Rather, the plaintiff alleges that there are no administrative remedies available to AUI to further challenge the assessment. Also, a decision by a State court interpreting the Virginia State statute would not affect the decision of a federal constitutional issue. As the plaintiff asserts, only the application of a Virginia statute to the particular facts is in question. The Court must therefore retain jurisdiction over this action and must decide the issue under State law, as it is called upon to do in many other circumstances. The plaintiff is entitled to its choice of forum under 28 U.S.C. § 1345.
As indicated by the record in this case, the activities of the National Radio Astronomy Observatory are manifold, but its goal is singular and is expressed in the Foreward to its official publication, National Radio Astronomy Observatory:
The Observatory is devoted to research in astronomy .... The scope of the work [at the Observatory] is broadly conceived and directed to one common purpose-to discover and explain new scientific facts about the universe.[2]
From this starting point, the plaintiff has argued long and well that the Observatory is a unique facility dedicated to expanding man's knowledge of the outermost fringes of his environment. The commitment to exploring the universe which is evidenced throughout the record in statements by the Director of the Observatory and other scientists associated with the Observatory is inspiring. Few quests could equal that of seeking an understanding of man's place in the universe. This Court's inquiry is, regrettably, more earth-bound.
Section 58-441.6(t) of the Code of Virginia sets forth the relevant description of property exempt from taxation:
Tangible personal property for use or consumption by a college or other institution of learning ... provided such college [or] institution of learning ... is not conducted for profit.
The question for resolution is whether, under Virginia State law, AUI is a "college or other institution of learning." The Virginia taxing authorities have determined that the astronomical observatory operated by AUI *732 is not part of a "college or other institution of learning" within the meaning of Section 58-441.6(t).
The Virginia State Tax Commissioner, in accordance with the power delegated to him under Section 58-441.41 of the Virginia Code, has promulgated the Virginia Retail Sales and Use Tax Rules and Regulations. Section 1-96 of the regulations clarifies the phrase, "college or other institution of learning," as it is used in Section 58-441.6(t). The version of Section 1-96 which was in effect during the time period at issue here provided that "the term `college or other institution of learning' contemplates the existence of a faculty, a student body, and prescribed courses of study." Effective 1 January 1979, Section 1-96 was revised to more fully explain the nature of an "other institution of learning." According to the revised regulation,
An "other institution of learning" must be similar to a college. To be similar to a college, an institution must (1) employ a professionally-trained faculty; (2) enroll and graduate students on the basis of academic achievement; (3) prescribe courses of study; and (4) provide instruction at regular intervals over a reasonable period of time.
Under either version, the plaintiff must show that the Observatory maintains a faculty, enrolls a student body, and offers prescribed courses of study, as those terms are commonly understood.
The Virginia Supreme Court has been called upon only once to decide under § 58-441.6(t) whether a particular institution qualified as an "other institution of learning." In Department of Taxation v. Progressive Community Club, 215 Va. 732, 213 S.E.2d 759 (1975), the Supreme Court held that an institution administering a child development "Headstart" program was not an "institution of learning" as such institutions are commonly known in Virginia. 213 S.E.2d at 763-64. In so holding, the Supreme Court accepted without question the institution's claim that its program had educational value; the Court further agreed that the institution had taken on many aspects of an institution of learning. However, the child development program, in the opinion of the Virginia Supreme Court, did not sufficiently partake of the characteristics of an institution of learning to qualify for tax exemption. Id.
What is most instructive about Progressive is not the Court's holding but instead the basis upon which the Court's reasoning was built. Starting with Article X, Section 6(f) of the revised Constitution of Virginia (1971),[3] the Court acknowledged its prior view that exemption should be leniently viewed. It then pointed to its post-1971 decision in Commonwealth v. Research Analysis, 214 Va. 161, 163, 198 S.E.2d 622, 624 (1973) and Golden Skillet Corp. v. Commonwealth, 214 Va. 276, 278, 199 S.E.2d 511, 513 (1973). Both, construing exemptions not here applicable, applied strict readings of the exemptions against the taxpayer. The Court then explained its earlier decision in Richmond v. Day Nursery Ass'n, 207 Va. 561, 151 S.E.2d 370 (1966), a finding of an exemption in favor of a taxpayer, as being based on its pre-1971 understanding of the law. Finally, and most pertinently, the Court quoted the Maryland case of Perdue, Inc. v. State Dept. of Assessment, 264 Md. 228, 232-33, 286 A.2d 165, 167 (1972) as being expressive of the "same rule" as is now applicable in Virginia:
It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt must be resolved in favor of the State. In other words, `to doubt an exemption is to deny it.'
This is indeed a hurdle of great height. The odds that one may scale it are-astronomical. In Progressive the Court acknowledged the fact that the children, "manifestly ... benefited educationally *733 and intellectually." Yet under constitutionally mandated strict construction the Court held the Headstart program was not exempt as an "institution of learning."
The plaintiff in this case has convincingly shown that the Observatory plays a vital part in obtaining and disseminating new information in the field of astronomy. It has also been shown that the Observatory has a permanent staff comprised of persons who are highly educated in their field and who are available to and do assist others in becoming similarly skilled scientific researchers. These facts establish the educational value of the Observatory but they do not confirm its status as an institution of learning under § 58-441.6(t).
The three criteria for an institution of learning discussed in Section 1-96 of the Virginia tax regulations-faculty, student body, prescribed course of study-in combination strongly suggest that an institution must be student-oriented if it is to qualify for a tax exemption. A trained staff must be hired specifically to teach students. Individuals must be enrolled by the institution as students. The institution must offer its students prescribed courses of study.
With these facts in view, and being mindful of the aphorism, "to doubt an exemption is to deny it," the Court must hold that the Observatory is not an "institution of learning" within the meaning of the Virginia tax laws.
With reference first to the requirement of a faculty, the Observatory's staff members are hired primarily as researchers rather than as professors. It is admitted that during the taxable period in question the staff members regularly supervised the research efforts of visiting Ph.D. candidates who were in residence at the Observatory for varying periods of up to two years. The supervising staff members also sat as examiners for Ph.D. theses examinations at the request of, and in cooperation with the institution at which the Ph.D. candidate was actually enrolled. But a comparison of Exhibits 1 and 2 of the exhibits submitted along with the plaintiff's answers to interrogatories shows that many more research scientists were in residence at the Observatory than were visiting graduate students during the taxable period. This imbalance is heightened when visiting scientists and post-doctoral appointees listed in Exhibits 4 and 5 are taken into account. With over 100 staff members, visiting scientists, and post-doctoral appointees engaged in basic astronomical research, it cannot be said that the Observatory's activities were primarily directed toward the education of the fourteen Ph.D. candidates who were in residence during the taxable period.
Nor can the Ph.D. candidates or the students who participated in the summer programs described in the record be considered students of the Observatory. Each such student was enrolled at another educational institution while at the Observatory. They were visiting students or scholars. Indeed, the Ph.D. candidates did not have the formal status of "student" at the Observatory. The letters submitted as Exhibit 2 to the plaintiff's motion for summary judgment show that these students were employed by the Observatory as "Junior Research Associates." A Ph.D. candidate's advisors, one being a member of the Observatory staff and another being a faculty member at the school at which the student was enrolled, were responsible for the scope of his work on his thesis. Under the arrangement with the Observatory, the student could also spend a portion of his time on Observatory projects unrelated to his thesis. All these facts suggest that the presence of the Ph.D. candidates was incidental to the research work of the Observatory. Observatory staff members could obtain research assistants, at very little pay, who were qualified, interested, and who would themselves benefit from the association by completing the thesis requirement of the school in which they were enrolled.
The activities of the participants in the Observatory's summer programs are not so clearly set forth in the record. The following constitutes the complete description of the program in the plaintiff's motion for summary judgment:

*734 The Observatory recruits summer research assistants for a three-month period falling between June and October of each year. During his tenure at the Observatory, each summer research assistant works under an Observatory staff member who functions as the assistant's advisor. As indicated above, summer students come from institutions of learning all over the country, including the University of Virginia.
Even from this sparse information, several points may be gleaned. The participants in the summer program are enrolled as students in institutions other than the Observatory. The Observatory views the participants as research assistants. If the participant receives any course credit for his activities at the Observatory, it is from his own university. Because the summer program participant's stay is of limited duration, he is necessarily more restricted to performing the work assignment given him by his advisor. This is most closely analogous, not to a summer school program, but to the employment of a law student by a law firm as a summer associate. One could not claim that the law firm became an "institution of learning" by virtue of the association, though the law student may have benefitted educationally by his experience.
In order to gain tax exempt status as an institution of learning, an institution must also prescribe a course of study for its students. The description of the summer program cited above does not indicate that the participants undertook a course of study at all. They worked as research assistants for the summer. The Ph.D. candidates were engaged in courses of study, but the courses of study were prescribed by the institutions in which the students were enrolled and not by the Observatory. Each of the students had an advisor from the enrolling institution. The record reflects that the enrolling institution maintained control over the course of study. The letters sent to Ph.D. students accepted as Junior Research Associates in 1976 emphasize that the university at which the student was enrolled would judge whether the quality of the thesis work met its standard for a doctoral degree.
It is thus clear that the Observatory, as a separate institution, did not sufficiently partake of the characteristics of an institution of learning. The plaintiff argues, however, that the Observatory need not be viewed as a separate institution. Counsel for the United States submits that the Observatory must be an institution of learning because the several universities which comprise AUI would qualify as institutions of learning under the Virginia statute. In the plaintiff's words, the Observatory "partakes of the qualities of its creators." The plaintiff supports this analysis by referring to a line of cases in which tax-exempt status was conferred upon organizations created by hospitals acting jointly, where the purpose of the organizations was to accomplish goals or programs which the hospital otherwise would have been pursuing singly. See Department of Revenue v. Central Medical Laboratory, 555 S.W.2d 632 (Ky.1977); Joint Hospital Services, Inc. v. Lindley, 6 Ohio Ops.3d 371, 52 Ohio St.2d 153, 370 N.E.2d 474 (1977).
The defendant objects to application of this foreign authority in a Virginia case because in Virginia a specific statutory enactment was required to confer tax-exempt status upon nonprofit hospitals themselves. Section 58-441.2(f) of the Virginia Code expanded the definition of "nonprofit hospitals" eligible for tax exemption to include nonprofit hospital cooperatives or corporations organized solely to provide services to nonprofit hospitals. Of course, Section 58-441.2(f) is not directly applicable to this case, but it does provide an indication that in Virginia the tax-exempt status of progeny created by the mating of tax-exempt organizations must be strictly scrutinized. The Court will follow that lead.[4]
*735 AUI's responsibilities are the management, operation, and maintenance of the Observatory. These responsibilities however, do not directly or primarily benefit the students of AUI's member schools. As the plaintiff readily admits in its motion for summary judgment, "the Observatory is by no means the preserve of these institutions of learning [which comprise AUI] .... Its tools and facilities are used almost exclusively by astronomers and physicists, both pre-doctoral and post-doctoral...." Referring to Exhibit 2 of the plaintiff's answers to interrogatories, the Court notes that only three of the fourteen resident Ph.D. candidates during the taxable period were students at a member school of AUI. Moreover, in the publication, National Radio Astronomy Observatory, the policy is stated that "in gaining access to the facilities [of the Observatory], a scientist from an AUI university has neither more nor less opportunity than does any other suitably qualified worker." (Exhibit 1 to the plaintiff's motion for summary judgment, p. 19).
The member schools of AUI have not, as the plaintiff asserts, simply pooled their resources to tackle an educational project that none could handle individually. Quite clearly, AUI has assumed the management responsibility for a government-funded research center. In analyzing the activities engaged in at the Observatory, the Court has found that the activities do not themselves establish an entitlement to an exemption under Section 58-441.6(t). The fact that a nonprofit corporation sponsored by nine universities supervises the activities does not alter the analysis. Accordingly, the Court finds that the Virginia Department of Taxation properly concluded that the Observatory did not qualify for an exemption under Section 58-441.6(t) because it was not an institution of learning.[5] Judgment will therefore be entered in favor of the Commonwealth of Virginia.
NOTES
[1] Va.Code Ann. § 58-441.6(q); Va.Code Ann. § 58 441.6(t).
[2] The publication, National Radio Astronomy Observatory, is submitted as plaintiff's Exhibit 1. The statements contained in the publication are verified by Dr. Morton S. Roberts, Director of the Observatory, in his affidavit filed 30 June 1980.
[3] Article X, Section 6(f), adopted 1 July 1971, provides that:

Exemptions of property from taxation as established or authorized hereby shall be strictly construed.
Va.Const. art. X, § 6(f).
[4] Further, the plaintiff's claim that the Observatory is the child of AUI and that the Observatory assumes the qualities of its creator is not necessarily accurate in this instance. The plaintiff acknowledges that it was the National Science Foundation which obtained the funding from the U.S. Congress for the construction of the Observatory. The United States government continues to bear the financial responsibility for the entire operation of the Observatory. According to the original complaint, the purposes, functions, operations, and activities are those established by the National Science Foundation. If AUI was present at the Observatory's conception, it was a voyeur.
[5] The Court is mindful of the fact that rigid structures should not be imposed upon the manner in which man seeks knowledge. Nor should institutions of learning be required to conform to some concept which, having been conceived, already is in process of obsolescence. Such is not the stuff of this holding. It deals only with tax exemption.