UNITED STATES of America, Plaintiff,

v.

JACKSON COUNTY, MISSOURI, et al., Defendants.

No. 85–0981–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

June 30, 1988.

**480**

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., Michael C. Durney, John J. McCarthy, Richard A. Correa, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff.

Lisa G. Nouri, John B. Williams, Office of the County Counselor, Michael F. Dandino, Legal Counsel, Kansas City, Mo., for defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

On August 9, 1985, the United States filed a declaratory judgment action alleging that the United States Constitution and the laws of Missouri prohibit Jackson County, Missouri, from assessing and collecting taxes on certain property owned by the United States located in Jackson County. Plaintiff's complaint further sought injunctive relief restraining assessment and collection of taxes on this property in the future.

On December 30, 1985, I ordered that the first phase of this case would be limited to the issues of whether any interest conveyed by contract between the Allied Corporation, Bendix Kansas City Division (hereafter Bendix) and the Department of Energy (DOE) is subject to taxation by Jackson County and whether the court is barred from enjoining the collection and imposition of these state taxes by the Anti–Injunction Act, 28 U.S.C. § 1341.

On July 22, 1986, plaintiff filed a Motion for Summary Judgment alleging that the contract between DOE and Bendix does not convey to Bendix any property interest, either real or personal, and therefore Bendix is not subject to the real property, business personal property and manufacturers' taxes that Jackson County has attempted to impose on this property.

Defendants contend that the contract between DOE and Bendix conveys to Bendix a possessory interest in the property at the DOE plant and that this interest is subject to real, business personal property and manufacturers' taxes.

### Standard for Summary Judgment

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which

that party will bear the burden of proof at trial. *Id.* 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

### Stipulated Facts

The following facts are undisputed having been stipulated to by the parties for the purpose of this motion:

1) The United States owns a DOE nuclear weapons components production plant of approximately 3.2 million square feet located at 2000 East 95th Street in Kansas City, Jackson County, Missouri. The primary purpose of the DOE plant is to produce non-nuclear electrical, electronic, mechanical, electromechanical and plastic component parts for the United States' nuclear weapons program. The DOE Kansas City plant is part of a system of government owned laboratories and plants in which DOE develops and produces nuclear weapons for national defense.

2) The DOE Kansas City plant is owned in fee simple by the United States. Except for a limited amount of leased equipment and licensed software, all property, including the real property and the tangible personal property, such as inventory, equipment, machinery, tools, raw materials, goods in process and finished products is also wholly owned by the United States. Title to all property purchased under the contract passes directly from the seller to the United States, Contract Clause 10(b).

3) Bendix manages, operates and maintains the DOE Kansas City plant under contract with and at the direction of DOE.

4) One five year contract became effective on January 1, 1977. This contract was followed by another five year contract effective on January 1, 1982.

5) The contract defines and controls the relationship between DOE and Bendix and the work which Bendix performs for DOE at the plant. The contract provides that Bendix manages, operates and maintains the plant in accordance with the direction of the DOE contracting officer. Contract Clause 2(b), Section (1)(i) and Appendix B.

6) All of the work performed by Bendix at the Kansas City plant is performed for DOE. No part of the plant, including the real property and the tangible personal property, is utilized by Bendix for any purpose other than the performance of work for DOE and at DOE's direction under the contract. Bendix has no right to use the plant or any equipment therein for its own account or for its own business; Bendix can only use the plant and the equipment

at the direction of DOE in performing the contract for DOE. Contract Clause 1(e) and Appendix C.

7) There is no specific language in the contract or in any deed, lease or other agreement, oral or written, which conveys or purports to convey any property interest to Bendix in any real property or tangible personal property located at the DOE Kansas City plant. All of the real and tangible personal property at the plant is exclusively owned by the United States or licensed or leased by Bendix on behalf of the United States with any interest in the property licensed or leased passing directly from the licensor or lessor to the United States.

8) The risk of loss of all the property at the DOE Kansas City plant, including its contents, is solely on the United States as the owner of the property with the exception of loss, destruction or damage resulting from the willful misconduct or lack of good faith on the part of the General Manager of Bendix. Clause 10(f) and Clauses 5(d)(5) and 5(e)(17).

9) The Contract Clause 64(a)(1) further provides that the United States may terminate the contract for its convenience without any required period of notice to Bendix.

10) Under the contract, Bendix has the right of access to the DOE plant and the non-exclusive right to utilize the tangible personal property located at the plant for the sole purpose of performing its duties under its contract with DOE. Bendix has no right under the contract or otherwise to use the plant or the equipment to the exclusion of the United States or to the exclusion of third parties who may be permitted on the premises by the United States. Rather, the United States can control Bendix and its use of the plant and the equipment and can even terminate the contract and abrogate Bendix's duty to perform the contract and Bendix's right of access to the plant and the equipment. Contract Clauses 1(e) and 64(a)(1) and Appendix C.

11) Bendix is authorized to use all government owned, leased or licensed goods, supplies, tools, equipment and machinery at the DOE Kansas City plant in performance of its DOE management and operating contract.

12) Certain capital equipment used by Bendix in performance of work under the contract is leased and these leases are entered into by Bendix as lessee. Any property rights in such leases belong to the United States.[1]

13) Contracts for goods, supplies, materials, service, information and/or equipment that it utilizes at the DOE Kansas City plant are entered into by Bendix; the United States is not a named party. Neither the United States nor the contracting officer is bound by these contracts.

14) In 1985 and the previous five years the United States has rejected some supplies, machinery or other property purchased or acquired by Bendix in connection with the performance of its contract at the Kansas City plant. The items rejected were returned to Bendix. The corporation would then decide to deviate, reject or return for rework to the vendor the rejected item. Deviation requires the concurrence of the design laboratory. All products ultimately must be accepted by DOE.

15) Neither the contract nor any other documents provide for or contemplate the sale by Bendix or the purchase by the United States of any product of the DOE Kansas City plant. The products of the plant, along with everything else in the plant, are owned by the United States.

16) Bendix is obligated to manage, maintain and operate the DOE Kansas City plant within the limit of available government funds. Contract Clauses 2 and 3 and Appendix B. Bendix pays the expenses incurred under the contract by drawing on government funds held in a government owned bank account. Contract Clauses 5 and 6 and Appendices D-1 and D-2.

17) Pursuant to Clauses 12 and 5(d)(12) of the contract, the tax which is the subject of the present lawsuit, if paid, would be

1. I assume this means that Bendix, as a representative of the United States, leases property from a third party on behalf of the United States and that this leased property becomes part of the plant "managed by" Bendix.

paid directly from the funds of the United States.

18) Bendix does not pay and is not obligated to pay any rent, fee or other consideration, in money or other thing of value, tangible or intangible, in exchange for its presence or activities at the DOE Kansas City plant. Bendix does not own or have any capital investment in the real property or in any tangible personal property located at the DOE Kansas City plant.

19) For its services under the contract Bendix is paid an annual management fee. For the calendar year 1984, Bendix received a total fee of $9,272,048. Other than the management fee, Bendix receives no income for operating, managing and maintaining the DOE Kansas City plant. The management fee which Bendix receives is not related to the value of the real and personal property it manages, operates and maintains at the DOE Kansas City plant nor is it related to the amount or value of the weapons components or anything else produced at the plant.

20) Subject to certain specified conditions and controls, Bendix has the right to purchase with United States funds the production equipment necessary to fulfill the terms of the contract.

21) The prime contract between the United States and the corporation has been a cost plus award fee contract since July 1, 1977. The award fee is an amount determined by the performance of Bendix. The amount of increased award fee attributable to improved performance was $376,512 in 1981, $118,724 in 1982 and $75,109 in 1985.

22) The base fee received by Bendix for fiscal year 1984 was negotiated based upon an agreed estimated cost for performance of the work under the contract.

The parties also agree that:

1) The Jackson County Board of Equalization assessed manufacturing, inventory and equipment for the tax years 1979 through 1984 and assessed business and personal property for the same years.

2) Bendix protested the assessments for 1979 through 1984 before the Board of Equalization and the Missouri State Tax Commission.

3) Bendix received 1984 tax bills for business personal property taxes, manufacturer's tax for manufacturing inventory and for manufacturer's tax for manufacturing equipment. Bendix has not paid these taxes.

4) Bendix received 1985 tax assessments for real property, business personal property and manufacturer's inventory. Bendix protested these assessments before the Board of Equalization and the State Tax Commission.

5) Bendix received 1985 tax bills for business personal property and for manufacturer's machinery and equipment. Bendix has not paid these taxes.

### Anti–Injunction Act Not Applicable

The Anti–Injunction Act, 28 U.S.C. § 1341,[2] recognizes that a state's interest in administering its own tax laws without federal intervention is an important state interest. However, the Anti–Injunction Act does not restrict the *United States* from access to the federal forum when it asserts its own interest or that of its instrumentalities. *United States v. Anderson County, Tenn.*, 705 F.2d 184, 188 (6th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983), *citing Department of Employment v. United States*, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). Thus, the Anti–Injunction Act is not a barrier to a federal court's jurisdiction where, as here, the United States seeks relief from taxation by a state entity.

### The Contracts Between DOE and Bendix Do Not Convey a Taxable Interest to Bendix

Defendants argue that the intent of Missouri law is to tax *any* interest in property. In support of this argument, defendants

---

**2.** "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

rely on § 137.075 R.S.Mo. that states: "Every person owning or holding real property or tangible personal property on the first day of January including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." The terms "real property" and "tangible personal property" are defined in § 137.010 (Supp.1988) as follows:

(3) "Real property" includes land itself, whether laid out in town lots or otherwise, and all growing crops, buildings, structures, improvements and fixtures of whatever kind thereon, and all rights and privileges belonging or appertaining thereto;

(4) "Tangible personal property" includes every tangible thing being the subject of ownership whether animate or inanimate, other than money, and not forming part or parcel of real property as herein defined, but does not include household goods, furniture, wearing apparel and articles of personal use and adornment, as defined by the state tax commission, owned and used by a person in his home or dwelling place.

Based on *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977), defendants argue that Missouri can tax a possessory interest in publicly owned property notwithstanding the exemption from taxation of publicly owned property. Defendants assert that the contract between DOE and Bendix "creates a tenancy at will and at the same time a possessory interest." Defendants contend that the word "hold" in § 137.075 means "to be in possession of, to occupy." Defendants argue that Bendix "has sufficient control over the property involved to consider it in possession." Therefore, defendants conclude that Bendix's possessory interest in the DOE Kansas City plant is taxable under Missouri law.

■ The interpretation of a contract between the United States and another party or parties is a federal issue. *United States v. Anderson County*, 705 F.2d 184, 187 (6th Cir.), *cert. denied*, 464 U.S. 1017,

104 S.Ct. 548, 78 L.Ed.2d 722 (1983). A contract between a corporation and the United States is to be construed by application of the same principles of law applicable to contracts between private individuals. *Reading Steel Casting Co. v. United States*, 268 U.S. 186, 188, 45 S.Ct. 469, 470, 69 L.Ed. 907, 89 L.Ed. 907 (1925). The principles of general contract law apply to government contracts. *Priebe & Sons v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947). The contract itself evidences the intent of the parties unless the contract is ambiguous or confusing. *See* 3 *Corbin on Contracts* § 538, § 542.

The contracts between DOE and Bendix are neither confusing nor ambiguous insofar as the respective interests of DOE and Bendix in the plant are concerned. Therefore, recognizing that Missouri intends to tax any interest in property, the initial determination must be whether the DOE/Bendix contract conveyed to Bendix any property interest in the plant, its inventory, or its equipment.

Here, the parties have stipulated that no specific language in the management contract,

or in any deed, lease or other agreement, oral or written ... conveys or purports to convey any property interest to Bendix in any real or tangible personal property located at the DOE Kansas City plant. All of the real and tangible personal property at the plant is exclusively owned by the United States or licensed or leased by Bendix on behalf of the United States with any interest in the property licensed or leased passing directly from licensor or lessor to the United States.

Notwithstanding this, defendants contend that the contract creates a tenancy at will and thus a possessory interest in the plant by virtue of Bendix's right of access to and control of the DOE Kansas City plant. Defendants rely primarily on *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977)[3]

---

**3.** Defendant also relies on *City of Detroit v.*

*Murray Corp.*, 355 U.S. 489, 78 S.Ct. 458, 2

where the Forest Service provided homes to some employees so that they would be close to where they performed their duties. Occupancy of these homes was viewed by the Forest Service as partial compensation and a deduction was made from the employees' salaries. Further, the California statutes specifically authorized an annual property tax on possessory interests in improvements on tax exempt land. In upholding the possessory tax, the Supreme Court stated that "a state may, in effect, raise revenues on property owned by the United States as long as that property is being used by a private citizen or corporation and so long as it is the possession or use by the private citizen that is being taxed." *Id.* at 462, 97 S.Ct. at 704.

In applying *County of Fresno* to this case, defendants rely on the word "holding" in § 137.075 as demonstrating Missouri's intent to tax possessory interests. Defendants furnish no authority for concluding that "holding" has such a meaning. Only administrators of estates have been taxed for "holding" property. *See State ex rel. Rudder v. Haphe*, 31 S.W.2d 788, 791, 326 Mo. 460 (1930).

■■■ Further, even if I assume that Missouri intends to tax possessory interests in property, Bendix has no possessory interest under the DOE/Bendix contract. Defendants label Bendix's interest under the contract as a tenancy at will. A tenancy at will has been described as "an estate which simply confers a right to the possession of the premises leased for such indefinite period as both parties shall determine such possession shall continue." 49 Am. Jur.2d Landlord and Tenant, § 74 at p. 115. A tenancy at will is a leasehold estate and the right of possession under a leasehold estate is the right of possession of the land,

and the exclusive occupation of it for all purposes not prohibited by its terms. *See* 49 Am.Jur.2d, 46 § 5. A tenant at will holds possession of premises with the permission of the owner or landlord. *Johnson v. Simpson Oil Co.*, 394 S.W.2d 91, 96 (Mo.App.1965). Therefore, a tenancy at will in Missouri involves possession of the premises for an indefinite period of time.

■■ Here, the contracts between the DOE and Bendix have each been for a definite period of five years. Thus, one of the chief characteristics of a tenancy at will is lacking.

■■ Furthermore, the parties agree that whether Bendix had possession of the plant depends on the degree of control over the plant granted to Bendix by the contract. To have legal possession of real property, a person must have sufficient control to enjoy the exclusive right to use of the property. 1 Tiffany *Law of Real Property*, (3rd Ed.) § 94 pp. 143–44, *quoted in Sproul v. Gilbert*, 359 P.2d 543, 549–51 (Or.1961). In *Sproul*, the court emphasized that possession is determined by the character of the occupant's right to use the property until the occupant's interest is terminated. "If, prior to termination, the transferor can rightfully interfere with every use the occupant might make of the premises, the interest is clearly a mere license." *Id.* at 550.

Here, the DOE/Bendix contract does not grant the right of exclusive possession to Bendix. Control of the premises remains at all times in DOE. Bendix's use of the property is subject to DOE's direction. Bendix has the nonexclusive right to manage the plant only for DOE's benefit. Bendix has no right to exclude third par-

L.Ed.2d 441 (1958) and *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958). In *City of Detroit*, a tax on a private manufacturer's "possession" of government property was upheld where there was no effort to hold the United States or its property accountable. In *Township of Muskegon*, a tax on a government supply contractor was upheld where the contractor was using the property in connection with its own commercial activities. However, these cases are inapposite because

Bendix is not using the government property for its own benefit; Bendix has access to and control of the DOE Kansas City plant solely for the purpose of managing the DOE plant. In fact, in *Township of Muskegon*, the court states that the tax might have been declared unlawful if the Government had reserved such control over the activities and financial gain of [the contractor] that it could properly be called a "servant" of the United States in agency terms.

ties. DOE can terminate the contract at will and deny Bendix access to the plant.

Defendants rely on provisions of the contract providing that Bendix has control of its employees, that Bendix is responsible for hiring all personnel, that Bendix shall use its best judgment, skill and care in performing the contract and that Bendix received a substantial fee in 1984. These provisions do no more than give Bendix control over the management responsibilities it assumes under the contract; these provisions give Bendix no control over the plant, equipment or inventory. Bendix does not pay and is not obligated to pay any rent, fee or other consideration in exchange for its presence or activities at DOE's Kansas City plant. Bendix does not own or have any capital investment in the real property or in any tangible personal property located at the DOE Kansas City plant. The parties' intent was to allow Bendix access to the plant and the tangible personal property for the specific and only purpose of managing the plant at the direction of DOE. Defendants do not point to any contract provision that gives Bendix control over the plant or equipment.

For the foregoing reasons I am convinced that the DOE/Bendix contract grants to Bendix a mere license to enter the DOE plant and supervise its operations. No basis exists for concluding that Missouri intends to tax the mere right to enter the plant and perform a managerial function.

Because the DOE/Bendix contract does not convey any interest in property to Bendix, it is unnecessary to consider whether the challenged tax assessments violate the Supremacy Clause of the United States Constitution.

Therefore, it is hereby ORDERED that:

1) plaintiff's motion for summary judgment is granted; and

2) the January 1, 1977, and the January 1, 1982, contracts between DOE and Bendix convey to Bendix no property interest in the DOE Kansas City plant and, therefore, the defendants had no legal authority to assess or collect real property, business personal property and manufacturer's tax-

es from Bendix for any year covered by those contracts so long as they were not modified in a way that is inconsistent with the parties' factual stipulations in this case.