UNITED STATES of America, Appellee,

v.

Duane BENTON, Director of Revenue, State of Missouri; Missouri Department of Revenue; State of Missouri, Appellants.

No. 91–2206.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1992.
Decided Sept. 16, 1992.

**512**

James R. McAdams, Jefferson City, Mo., argued (William L. Webster and James B. Deutsch, on brief), for appellants.

David English Carmack, Washington, D.C., argued (Gary R. Allen, John J. McCarthy and David M. Katinsky, on brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN, Circuit Judge, and WELLFORD,[*] Senior Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

This case involves the disputed payment of Missouri sales and use taxes by a federal contractor, the Olin Corporation. The United States argues that the taxed purchases involved materials which Olin resold to the government. In Missouri, the sales tax applies to sales for retail, a category that does not include sales for resale. As a result, the government argues, these purchases were wrongly taxed, and the United States is entitled to a refund. Missouri contends that these transactions were properly taxable.

The District Court agreed with the United States, holding that it was entitled to a refund of $683,631.26. The Court also awarded the United States prejudgment interest on this amount. *United States v. Benton*, No. 89–0608–CV–W–3, slip op. 3 (W.D.Mo. Mar. 25, 1991). Missouri now appeals, raising several procedural and substantive arguments for reversal. After *de novo* review, as required by *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), we affirm in part and reverse in part.

## I.

The facts of this case are uncomplicated. Olin entered into a contract with the United States to operate the Lake City Ammunition Plant in Independence, Missouri. Since November 3, 1985, Olin has operated and maintained the plant under the terms of this contract. The contract requires that Olin purchase the products and materials it needs to perform its contract function, manufacturing ammunition. While Olin does not have to gain the approval of

* The Hon. Harry W. Wellford, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

the government when it makes these purchases, it is required to report to the government, and the majority of its tasks are expressly subject to the direction or approval of an Army contracting officer.

Under the terms of the contract, Olin has the freedom to choose the vendors it would like to do business with. It is not required to solicit bids and choose the lowest bidder. The items that Olin orders are shipped directly to the plant in Independence, with the direction that title is to pass to the United States upon delivery at the plant. Appendix 691, ¶ 9. Olin pays for these purchases with its own money and is then reimbursed by the United States under the terms of the contract. These reimbursements have included the sales and use taxes paid by Olin on these purchases.

## II.

Prior to reaching the merits of this appeal, we must confront several procedural claims raised by Missouri. It alleges that the federal courts should not consider the government's claims because (1) federal jurisdiction is prohibited under the Tax Injunction Act, 28 U.S.C. § 1341; (2) the federal government did not have standing to bring this claim; and (3) principles of comity and federalism should cause the federal courts to abstain from hearing this case. We reject these arguments. Only the first and second merit any discussion.

The Tax Injunction Act states:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. Missouri contends that the Act bars this action by the United States. It argues that the government is merely standing in the shoes of Olin, and that this case is concerned solely with the

determination of state tax-law issues. As a result, it argues that this case properly belongs in the state courts.

■ At the heart of this dispute lies the contractual relationship between the United States and Olin. To determine whether the transfers between the original vendors and Olin, and the subsequent transfers by Olin to the United States amounted to a "sale for resale" under Mo. Rev.Stat. § 144.010.1(8) (1986), the contract between Olin and the government must be examined. The interpretation of a contract between the United States and another party depends on federal law. *United States v. Jackson County, Missouri*, 696 F.Supp. 479, 484 (W.D.Mo.1988). In such a situation, the Tax Injunction Act does not bar the United States from seeking a resolution of this federal question in a federal forum. See *United States v. Broward County, Florida*, 901 F.2d 1005, 1008 (11th Cir. 1990) ("Section 1341 does not bar a suit brought by the United States to recover taxes improperly exacted from a contractor performing a federal contract when the United States has paid the State taxes pursuant to its contract with the federal contractor.").[1]

■ The State argues that the standing of the United States to bring this action is barred by the very terms of the contract with the Olin Corporation. Under the contract, the government was not obligated to reimburse Olin for payments made by Olin to the State that were not properly due because of an exemption from taxes. Here, the whole substantive point of the government's suit is that the transactions in question were exempt. Therefore, the argument runs, the government lacks standing to bring the suit. It should have been brought by Olin. In this event, though, Olin would, by hypothesis, win the case, and Olin would then, presumably vol-

---

**1.** We also reject Missouri's contention that the Ninth Circuit's opinion in *United States v. California*, 932 F.2d 1346 (9th Cir.1991), *petition for cert. filed*, No. 91–2003 (U.S. June 12, 1992), divests us of jurisdiction in this case. *California* may be distinguishable, but even if it isn't, we find more persuasive the reasoning of *United*

*States v. Broward County, Florida*, 901 F.2d 1005 (11th Cir.1990), which allowed the United States to proceed as the proper party in an action in quasi-contract for money had and received in a situation where a federal contractor had been improperly assessed state taxes.

untarily, turn over the funds to the government, which, in any event, would have an action against Olin to recover them if necessary. We see no reason why such a circuity of action should be required. Permitting the government to bring this case means that the money ends up in the right place, back with the government, after only one lawsuit, instead of two. No substantive rights are violated. To dismiss this case for lack of standing, accordingly, seems to us a needless procedural exercise. We hold that the United States does have standing, and we now turn to the merits.

### III.

■ The primary issue in this appeal is whether the transactions between the vendors, Olin, and the government, were properly taxable as a "sale at retail" under the Missouri tax code. Mo.Rev.Stat. § 144.020.1 (1986), levies a tax

upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state.

A "sale at retail" has been defined by the legislature as "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration...." *Id.* at § 144.010.1(8) (1986). Thus, a "sale at retail" is a transfer for use or consumption which is "not for resale."

The government argues that the materials purchased by Olin were subsequently resold to the United States. It argues that upon receipt from the vendors, Olin immediately transfers title to the United States. This transfer of title, the government posits, renders the initial transfer between the vendors and Olin non-taxable as a sale for resale under § 144.010.1(8). Missouri responds that there is no sale for resale, that the only taxable transaction occurs between the vendors and Olin, and that, although title to the goods passes from Olin to the United States upon delivery, Olin still retains a significant ownership interest

in the goods while it uses them to perform under the contract. We hold that Olin did resell the disputed materials to the United States, and thus the initial transaction between the vendors and Olin was not a sale at retail and not taxable.

Under Missouri law, the sales tax is paid by the purchaser of the goods. *State ex rel. Thompson–Stearns–Roger v. Schaffner,* 489 S.W.2d 207, 215 (Mo.1973); Mo. Rev.Stat. § 144.060 (1986). The Supreme Court has determined that a "purchaser" is the person who orders the goods and either pays for them or is legally obligated to pay for them. *Alabama v. King & Boozer,* 314 U.S. 1, 10, 62 S.Ct. 43, 46, 86 L.Ed. 3 (1941). In this case, there is no dispute that Olin was a purchaser of the goods it ordered from the vendors. Our analysis focuses on whether those transactions were final for sales-tax purposes, or whether Olin turned around and resold the goods to the United States. Under the contract between Olin and the United States, the government is required to reimburse Olin for its purchases. Appendix 688, 773. We think this is sufficient to indicate that a resale has taken place.

The Lake City Ammunition Plant is owned by the United States. Olin was hired by the Department of the Army to operate and maintain the plant. It is not an agent of the government, but is instead an independent contractor. Under the terms of its contract, Olin must furnish the equipment, supplies, and materials needed to operate and maintain the plant. To do this, Olin may go out and contract with individual vendors to purchase the materials it needs. It does not need the approval of the United States to pick any specific vendor. However, on the purchase orders, the vendors are informed that title to the goods which Olin purchases is to pass to the United States upon their delivery to the plant. Furthermore, under the terms of the contract, the government is required to reimburse Olin for all purchases of personal property needed for the operation of the plant. After delivery of the items to the plant and payment for the items by Olin, the government reimburses Olin for all of

these expenses. The government argues that these facts show a seller/buyer relationship between Olin and the government.

The State argues that despite the transfer of title to the United States, Olin retains an ownership interest in the property because it has dominion and control over it. But whatever interest Olin has in the property, if any, does not prevent the United States from receiving title to the goods. For instance, upon delivery to the plant, the United States is clearly given the power to direct that the goods be shifted to other plants or other projects. It has exercised this power in the past, and Olin is in no position to prevent such a transfer. Furthermore, under the Missouri Department of Revenue's Rule No. 28, "[t]he power to designate who is to obtain title to the property or to physically transfer the property is enough to categorize the person as a seller of the property." 12 C.S.R. 10–3.012(3). This is exactly the position that Olin occupies in this case.

The facts in this case are analogous to those confronted by the Supreme Court of Missouri in *Canteen Corporation v. Goldberg*, 592 S.W.2d 754 (Mo.1980). In that case, Canteen operated a dining facility for residents of the Council Plaza Retirement Home. *Id.* at 756. Under its contract with Council Plaza, Canteen would bill Council Plaza for the number of meals served per month. Council Plaza, in turn, would bill the residents for the meals that they received. Under the terms of the contract, however, Council Plaza was legally obligated to pay Canteen for the meals regardless of whether or not it received payment. *Id.* The Court found that these transactions amounted to a sale for resale. Initially Canteen would sell the meals to Council Plaza. Council Plaza would then turn around and resell these same meals to the retirement-home residents. The Missouri Supreme Court found that this was not a sale at retail, and thus sales tax could not be imposed.

In this case, the process is similar. Olin contracts with the vendors to purchase goods for the project. Upon receipt of these goods, Olin resells them to the United States, which is obligated under the terms of the contract to pay for them. Under Missouri law, no sales tax will be imposed if the sale is for resale "in any form." Section 144.010.1(8). While these transactions are not a typical resale, we conclude that the passage of title to the United States in exchange for the reimbursement of the purchase price amounts to a resale under Missouri law. Thus, the District Court did not err when it held that the transactions in this case were not subject to sales tax.[2]

## IV.

The final issue is whether the government is entitled to prejudgment interest on the amount to be refunded from Missouri.[3] The District Court awarded the government interest, holding that the amount should be calculated using Mo.Rev.Stat. §§ 32.065 and 144.190 (1986). Missouri argues that this was error for two reasons: (1) the United States is not entitled to prejudgment interest on debts owed to it by the States, based upon 31 U.S.C. §§ 3701(c) and 3717, and (2) if the United States is entitled to interest, the District Court erred in applying §§ 32.065 and 144.190 and in not fixing a date when the interest began to accrue. As we agree with the first argument, we decline to address the second.

■ The Debt Collection Act of 1982, 31 U.S.C. § 3701 *et seq.*, "provides for interest against 'persons' who owe past due debts to the United States." *Texas v. United States*, 951 F.2d 645, 649 (5th Cir.), *petition for cert. filed*, No. 91–1729 (U.S. April 27, 1992). Section 3701(c) of the Act excludes an agency of a state government from the definition of the term "person" in

---

2. Under Missouri law, if items are exempted from sales tax, they are also exempted from use tax. Mo.Rev.Stat. § 144.615(6) (1986). Therefore, in the present case, Missouri is not entitled to any use taxes.

3. Missouri also argues that the District Court erred in allowing the government to present "surprise evidence" relating to the amount of taxes paid. This argument is without merit.

§ 3717. The question here is whether this Act abrogated the common-law rule allowing the federal government to collect interest from Missouri in this case. We hold that it did.

■ Before the enactment of the Debt Collection Act, the United States had the right, under federal common law, to receive interest on debts owed to it by the States. See *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); *Rodgers v. United States*, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947). Since the Act was enacted, several circuits have addressed its effect on the common-law right to receive interest from the States. The majority has held that this right no longer exists absent specific statutory language to the contrary. See *Arkansas by Scott v. Block*, 825 F.2d 1254 (8th Cir.1987); *Perales v. United States*, 598 F.Supp. 19 (S.D.N.Y.), *aff'd*, 751 F.2d 95 (2d Cir.1984) (per curiam); *Pennsylvania v. United States*, 781 F.2d 334 (3d Cir.1986); *Texas, supra.* Only the Tenth Circuit has held to the contrary. *Gallegos v. Lyng*, 891 F.2d 788 (10th Cir.1989). The Eleventh Circuit has avoided this question. See *Florida Department of Labor v. United States Department of Labor*, 893 F.2d 1319 (11th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 49, 112 L.Ed.2d 25 (1990).

While this issue has stirred up much controversy, we are bound by our panel's decision in *Arkansas by Scott.* "By enacting a statute that explicitly denies the federal government authority to charge interest on debts owed it by the states, Congress abrogated any pre-existing common law right." *Arkansas by Scott*, 825 F.2d at 1258. We have been directed to no subsequent development that would persuade us to hold otherwise. Thus, we hold that the District Court erred in awarding prejudgment interest to the United States.

The judgment of the District Court is affirmed in part and reversed in part. The cause is remanded to that Court with instructions to enter a new judgment in accordance with this opinion.

It is so ordered.

WELLFORD, Senior Circuit Judge, dissenting.

One of the clauses in the contract between the United States and Olin relates to "allowable cost and payment." *See* Contract Part II—Section I, ¶ 2, clause 14 (incorporating Federal Acquisition Regulation ("FAR") 52.215–7 (APR 1984)). The contract incorporates FAR 32.205–41 by reference, which provides in pertinent part:

(a) The following types of costs are allowable:

(1) Federal, State, and local taxes (see part 29), except as otherwise provided in paragraph (b) below that are required to be and are paid or accrued in accordance with generally accepted accounting principles.

.        .        .        .        .

(b) The following types of costs are *not* allowable:

.        .        .        .        .

(3) *Taxes from which exemptions are available to the contractor directly*, or available to the contractor based on an exemption afforded the Government.... The term *Exemption* means freedom from taxation in whole or in part and includes a tax abatement or reduction resulting from mode of assessment, method of calculation, or otherwise.

(emphasis added). Therefore, assuming that Olin initially was exempt from paying the taxes at issue as the government now contends, such taxes *paid by Olin* to the State of Missouri were *not* reimbursable or "allowable" costs under the contract.[1] If no contractual agreement bound the United

---

1. It is fairly clear that the United States claims that it is exempt from taxation because the goods sold to Olin were not "sales at retail" under Mo.Rev.Stat. § 144.020.1 (1986). The government does not claim that the tax imposed in this case was unconstitutionally discriminatory or unconstitutional as applied. The tangled

issue of whether sovereign immunity extends to contractors who supply the government is, therefore, not reached in this case. For a discussion of that difficult issue, see *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1981).

States to reimburse Olin for the taxes, then the United States has no basis on which to establish direct injury resulting from the actions of the State of Missouri, *i.e.* standing, in this suit. I, therefore, find the decision of the district court to be in error.

The majority raises the issue of standing as one of the two procedural claims that warrants discussion, but it does not directly address the issue in its analysis. Further, it does not acknowledge the error in the district court's reasoning with regard to standing. The district court adhered to its earlier finding, published at 729 F.Supp. 671, (W.D.Mo.1990), that the United States had properly established standing. That finding reads in pertinent part:

> [The United States] counters that it has suffered a direct pecuniary injury as a result of the imposition of Missouri sales and use taxes on Olin, because "[a]ny sales and use taxes assessed or imposed under Missouri law on Olin in its performance of the Contract have in the past and would be in the future paid from the funds of the United States in accordance with the provisions of the Contract." Plaintiff's Complaint § 15. The contract requires the federal government to reimburse Olin for all *purchases* of tangible personal property made pursuant to the contract.

> \*    \*    \*    \*    \*    \*

The Court finds that the United States has alleged actual direct pecuniary injury *resulting from its obligation to reimburse Olin for purchases of personal property made pursuant to the contract....* Accordingly, the Court finds that the United States has standing to assert jurisdiction and is a proper party to bring this action.

*United States v. Benton,* 729 F.Supp. 671, 673 (W.D.Mo.1990) (emphasis added). In sum, the district court found that standing was established based on the government's contractual obligation to reimburse Olin. As explained above, however, the government was under no contractual obligation to reimburse Olin for those disbursements if Olin was initially exempt from paying those taxes.[2] Thus, absent a contractual obligation to Olin, in my view the government has no basis on which to establish standing. That the government may have erroneously allowed and repaid the taxes does not, in my view, give the United States standing to correct the situation by seeking a refund directly from the State of Missouri.[3]

In addition, the cases on which the district court relied are distinguishable from the instant case. *See United States v. DeKalb County,* 729 F.2d 738 (11th Cir. 1984); and *United States v. Virginia,* 500 F.Supp. 729 (E.D.Va.1980).[4] Those cases

---

2. The United States bases its substantive claim on the theory that *Olin* was *exempt* from paying the sales and use taxes in the first instance. If Olin were exempt as the government contends, I would conclude that the United States is procedurally barred from bringing this suit for lack of standing because it had no contractual obligation to reimburse Olin for those payments. If Olin were *not* initially exempt from paying those taxes, then the United States would fail on the merits of its claim. In reaching my ultimate conclusion, I assume, without deciding, that Olin was exempt from paying the taxes at issue.

If I were to reach the merits of the government's claim, however, I would agree with the majority that under these particular circumstances, there was a resale of personal property from Olin to the United States. *See Canteen Corporation v. Goldberg,* 592 S.W.2d 754 (Mo. 1980). It is noteworthy that Canteen Corporation, who occupied the analogous position of Olin in this case, sued for the refund in that controversy.

3. The United States might appropriately seek a refund from Olin, but Olin is the proper party to seek recourse, at its own expense, from the State of Missouri. As a practical and public policy matter, this conclusion reaches the better result. In freeing the United States from paying taxes from which Olin is exempt, the contract implicitly places the burden on Olin to recover any taxes that it might erroneously pay to the state. If the government could proceed as the plaintiff in suits such as this, there would be no incentive for federal contractors in Olin's position to challenge the taxes. Certainly this result was not intended by the contract.

4. The court also cited *United States v. Nevada Tax Comm'n,* 439 U.S. 435 (9th Cir.1971), but that case is inapplicable here. In *Nevada Tax Comm'n,* the United States was asserting its sovereign immunity from state taxation. The court held that the United States had standing because "'[t]he action ... is essentially to establish the right of the [U.S.] and those with whom it deals to be relieved from an unconstitutionally dis-

involved suits by the United States to recover taxes from state government, which taxes were paid by the United States indirectly through reimbursement pursuant to contractual obligations. In each case, the court found that the United States had standing to sue based on its contractual obligation to pay the taxes. *DeKalb,* 729 F.2d at 740 (the contract provided that the U.S. "would be responsible for all property taxes assessed against Bankers Life in connection with the property during the aforementioned term."); *Virginia,* 500 F.Supp. at 731 ("[T]he United States has a direct interest in this controversy because of its obligations under its cost-reimbursement contract."). In the case at bar, the United States was under no such contractual obligation, assuming that Olin is directly exempt from the taxes at issue. Therefore, the cases relied on by the district court are inapposite.

Under this suggested rationale, I find it immaterial that, as stated by the majority, "under the contract between Olin and the United States, the government is required to reimburse Olin for its *purchases.*" (emphasis added). That may be so, but the government is not contractually required to reimburse Olin for sales and use taxes mistakenly paid by Olin on those purchases.

I need not consider the applicability of the Tax Injunction Act in the absence of standing. Also, in the absence of standing, I need not reach the prejudgment interest issue.

I would reverse and respectfully dissent.

---

criminatory tax and to assert the constitutional immunity of the [U.S.] from taxation by the state.'" *Nevada Tax Comm'n,* 439 F.2d at 438–439 (quoting *United States v. Bureau of Revenue of New Mexico,* 291 F.2d 677, 678–679 (10th Cir.1961); *see also Marquardt Corp. v. Weber*

*County,* 360 F.2d 168 (10th Cir.1966) (when United States claimed sovereign immunity, court found that "upon payment of the tax pursuant to its contractual obligation, the government became the real party in interest...."); *see generally supra* note 1.