UNITED STATES of America,
Plaintiff–Appellant,

v.

BROWARD COUNTY, FLORIDA, William Markham, Broward County Appraiser, Joseph E. Rosenhagen, Broward County Revenue Collector, Defendants–Appellees.

No. 89–5600.

United States Court of Appeals,
Eleventh Circuit.

May 21, 1990.

Robert A. Rosenberg, Asst. U.S. Atty., Miami, Fla., John J. McCarthy, U.S. Dept. of Justice, Gary R. Allen, Chief, Appellate Section, David English Carmack, Washington, D.C., for plaintiff-appellant.

Gaylord Wood, Jr., B. Jordan Stuart, Ft. Lauderdale, Fla., for Wm. Markham.

James A. Thomas, Broward County Attorney's Office, Alexander Cocalis, Ft. Lauderdale, Fla., for Broward County.

Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

The question before us is whether the district court erred in holding that it lacked subject matter jurisdiction to entertain this action brought by the United States against the defendants challenging the amount of an assessment of real property

taxes on a federally-owned building and seeking a refund of taxes. We hold that there was subject matter jurisdiction and reverse.

The facts are not in dispute. The United States owns the Federal Building located at 299 E. Broward Boulevard, Ft. Lauderdale, Florida. Prior to its construction, the United States owned in fee simple the real estate upon which the building is located. The building was financed and constructed pursuant to the Federal Purchase Contract Program as authorized by the Public Buildings Amendments Act of 1972, Pub.L. No. 92–313, 86 Stat. 219, as amended (40 U.S.C. Sec. 602a). Under that program, the Administrator of the General Services (GSA) is authorized to enter into contracts for the construction of buildings upon land owned by the United States. GSA contracted for the construction of the Federal Building with the construction being financed by a loan from the Federal Financing Bank. As security for the payment of the loan, title to the building being constructed was placed in the name of the American Security and Trust Company as trustee. The cost of the construction of the building was $10,893,859 and the building was completed in 1978. Payments to the Federal Financing Bank in satisfaction of the construction loan continued until September 27, 1985, at which time the final payment was made and the trustee transferred legal title to the building to the United States.

Under 40 U.S.C. Sec. 602a(d) [1] an interest in real property acquired by the United States under the Public Buildings Program is subject to state and local property taxes until title to such interest rests in the United States. Thus, the Federal Building was subject to state and local real property taxes from 1978 to September 27, 1985. Broward County rendered property tax bills to the United States with respect to the Federal Building for each year from 1979 to 1985. These taxes were based upon assessed values established by Broward County as follows:

| Year | Value of Building |
| --- | --- |
| 1979 | $10,893,860 |
| 1980 | $10,893,860 |
| 1981 | $12,600,000 |
| 1982 | $12,600,000 |
| 1983 | $14,830,910 |
| 1984 | $14,830,910 |
| 1985 | $17,683,780 |

The United States paid under protest the property taxes assessed on the basis of the valuations. The United States maintained that the defendants failed to follow Article VII, Section 4 of the Florida Constitution and Section 193.011 of the Florida Statutes Annotated in valuing the Federal Building, and that if Florida law was properly applied the Federal Building would have been valued at $7,449,000 as of July 1, 1981, and that value, with appropriate adjustments for each year was the correct basis for assessment of property taxes. The United States appealed the assessment for each year to the Broward County Property Appraisal Adjustment Board (the administrative agency created by Chapter 194, Part 1, Florida Statutes § 194.015 to hear protests as to ad valorem assessments) and received a downward adjustment in the assessment, and hence, the amount of the tax due. No further action was taken by the United States until it filed this action.

The complaint of the United States sounds in general assumpsit (quasi-contract) and alleges the common counts for money had and received. It alleges that the defendants asserted excessive property taxes against the Federal Building for the years 1979 through 1985. It seeks a declaratory judgment that the defendants improperly assessed the taxes under Florida law and prays for a return of the excess property taxes paid to the defendants.

The defendants moved to dismiss the complaint for lack of subject matter jurisdiction on the grounds that challenges to state tax assessments may arise only under state law and are completely addressed by the laws of Florida; that an action in quasi-contract is inappropriate when the core issue is the amount of assessment of the

---

1. 40 U.S.C. Section 602a(d) provides:
   With respect to any interest in real property acquired under the provisions of this section, the same shall be subject to State and local taxes until title to the same shall pass to the Government of the United States.

property and not the amount of the tax paid, since this is an issue not addressed in the federal statutes and unknown at common law. As further grounds, defendants assert that since Congress by statute, 40 U.S.C. Section 602a(d), consented to state taxation of the Federal Building, the government submitted itself to state law with regard to its rights to contest the state tax. Under Florida law, this action is untimely because it was brought after the expiration of Florida's 60–day statute of limitations for challenging its assessment.[2] Finally, since state law governs this action, the Anti–Injunction Act, 28 U.S.C. Section 1341,[3] prevents the district court from maintaining this action.

The district court granted defendants' motion to dismiss the complaint on the ground that it lacked subject matter jurisdiction because 40 U.S.C. Section 602a(d) requires the submission of disputes concerning state taxation to the state's administrative or judicial procedures. Consequently, the district court refused "to extend subject matter jurisdiction into the purely state function of ad valorem property valuation." There is no doubt that the district court had jurisdiction to entertain this action. Under 28 U.S.C. Section 1345, the district court has original jurisdiction of all civil actions brought by the United States unless Congress specifically provided otherwise. And 28 U.S.C. Section 1331 confers jurisdiction upon district courts to entertain civil actions arising under federal law.

The issue of subject matter jurisdiction was properly raised by motion of the defendants, Fed.R.Civ.P. 12(b)(1), and presents the issue now before us.

The defendants, in arguing that the district court was without subject matter jurisdiction in entertaining the government's action of *indebitatus assumpsit* for money had and received because a challenge of a tax assessment is unknown at common law and may arise only under state law, "misconceives the theory of the Government's claim. It was not posited upon state law, common or statutory, but upon Federal law. Its action sounded in *quasi-contractus* for the recovery of its treasury funds paid by mistake which resulted in the unjust enrichment of the county. Neither voluntary payment nor the failure to exhaust state remedies was available as a defense to its claim." *United States v. DeKalb County*, 729 F.2d 738, 741 (11th Cir.1984). In *City of New Orleans v. United States*, 371 F.2d 21, 28 (5th Cir.), *cert. denied*, 387 U.S. 944, 87 S.Ct. 2076, 18 L.Ed.2d 1330 (1967), the Court stated that:

> [we] think there is ample power in the United States District Court to protect the sovereign against such unjust enrichment on familiar principles of money had and received. [citations omitted.] This harmonizes with the usual principle that Federal law fashions remedies for recovery of funds or property of the United States—including those from invalid tax exactions [Footnotes omitted].

The defendants counter that these cases are not in point because neither case involved a redetermination of the valuation of the property involved but rather that the tax collection was otherwise in error. The crux of defendants' argument rests upon their unavailing attempt to redefine this action from a quasi-contractual action to an action challenging defendants' tax assessment. While it is true that the improper valuation of the property caused an excessive assessment and overpayment of the taxes, and these errors are an element of the government's cause of action to recover

---

2. Section 194.171 Florida Statutes (1987) provides in pertinent part:
   (2) No action shall be brought to contest a tax assessment after sixty days from the date the assessment being contested is certified for collection ... or after sixty days from the date a decision is rendered concerning such assessment by the property appraisal adjustment board....

3. 28 U.S.C. Section 1341 provides:
   The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law when a plain, speedy and efficient remedy may be had in the courts of such State.

the overpayment of taxes, this does not change the nature of the cause of action or limit the United States to state causes of action for this refund of taxes.

■ The defendants next argue that the Anti–Injunction Act, 28 U.S.C. Section 1341, deprives the district court of subject matter jurisdiction. Although the statute precludes challenges by private litigants, it has been firmly established in an unbroken line of decisions that it does not prohibit the United States from maintaining such an action in a federal court. *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 470, 96 S.Ct. 1634, 1639, 48 L.Ed.2d 96 (1976); *Department of Employment v. United States,* 385 U.S. 355, 357–58, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966); *United States v. Arlington County, Virginia,* 326 F.2d 929 (4th Cir.1964); *United States v. Woodworth,* 170 F.2d 1019 (2nd Cir.1948). The district court, however, held that the United States is not exempt from the provision of Section 1341 because it has consented to the state's taxation by 40 U.S.C. Section 602a(d) which requires that the Federal Building "shall be subject to State and local taxes". It follows, it is said, that this expressly made the provisions of Florida law applicable to the assessments imposed. We disagree. The statute did no more than make the property subject to taxes, not to state procedural and administrative requirements. Waiver of rights of the United States and exceptions to the doctrine of sovereign immunity can not be implied but must be based on some express Congressional enactment. *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555 (1976).

Next, the defendants maintain that the United States stands in the shoes of American Security; that therefore it is not seeking a declaration of its own rights but only those of American Security. Consequently, this is an action brought by a private litigant which is barred by Section 1341. The legal title to the property that was taxed was held by American Security as security for repayment of the construction loan utilized by the United States to improve the realty. American Security paid the property taxes and the United States contractually agreed to and did reimburse American Security. The United States is seeking to enforce its own rights not those of American Security. Section 1341 does not bar a suit brought by the United States to recover taxes improperly exacted from a contractor performing a federal contract when the United States has paid the state taxes pursuant to its contract with the federal contractor. *United States v. Anderson County, Tenn.,* 705 F.2d 184, 188–89 (6th Cir.1983); *United States v. Bureau of Revenue of New Mexico,* 291 F.2d 677, 679 (10th Cir.1961); *United States v. Livingston,* 179 F.Supp. 9, 11–12 (E.D.S.C.1959), *aff'd without opinion per curiam,* 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960).

■ Finally, the defendants contend that while the general rule is that the United States is not subject to statutes of limitations which would otherwise bar actions at the common law, the rule is not applicable when the statute which creates the cause of action also creates time limitations on enforcing the cause of action; citing *United States v. California* 655 F.2d 914 (9th Cir.1980); *Denver & Rio Grand R. Co. v. United States,* 241 F. 614 (8th Cir.1917); *United States v. Magnolia Motor and Logging Co.,* 208 F.Supp. 63 (N.D.Cal.1962). The defendants point out that the Florida Statute which creates the right to contest a tax assessment, also contains a jurisdictional statute of nonclaim providing that no such actions may be considered by a court more than 60 days following certification of that year's tax rolls for collection. *See Coe v. I.T.T. Community Development Corp.,* 362 So.2d 8 (Fla.1978). Here the complaint on its face shows that it could not possibly have been filed within sixty days of certification of the 1979 through 1980 tax rolls for collections and thus its nonclaim statute bars this action.

This argument presupposes that the United States must look to the state law for the creation of its cause of action. But the cause of action asserted by the government is not a state law judicial remedy or

cause of action but is a federal common law cause of action in quasi-contract for money had and received. In these circumstances the state statute has no application to this action.

The cases relied on by the defendants are inapposite. Each of the cases involves a situation in which the government is in fact bringing an action expressly created by state law and where there would be no cause of action for the relief requested in the absence of state law.

We conclude that the district court erroneously held that it lacked subject matter jurisdiction to entertain this action.

Reversed and Remanded for a determination of the merits.