HATTER, District Judge:
 

 FACTS
 

 The United States, through the Departments of the Navy and Energy, contracted with Williams Brothers Engineering Company [“WBEC”] to manage oil drilling operations on federal land in California. California assessed WBEC $14 million in sales and use taxes for the years 1975 through 1981. The assessments were made pursuant to section 6384 of California’s Revenue & Taxation Code, which imposes sales and use taxes against federal construction contractors. WBEC was informed of the assessments through notices of tax deficiencies issued in 1978 and 1982.
 

 WBEC paid the assessments, under protest, with funds provided by the U.S., pursuant to their contract. After each payment, WBEC, under the direction of the United States, pursued administrative claims through California’s Board of Equalization to obtain a refund of the taxes paid. After each administrative claim was denied, WBEC filed suit in state court. Both state court actions were dismissed, without prejudice, in January, 1988, when WBEC and California stipulated to a $3 million refund, based on erroneous assessments against personal property purchased by WBEC and used or installed by government personnel. The remaining $11 million represents the taxes assessed on personal property installed by subcontractors managed by WBEC.
 

 In May, 1988, the U.S. filed suit in district court seeking declaratory relief establishing that California had erroneously classified and taxed WBEC as a construction contractor, as defined in California Sales and Use Tax Reg. 1521, and that the taxed property was exempt. The United States sought a refund of the $11 million remaining, plus interest. Later, the United States argued that it was entitled to restitution based on a quasi-contract theory under federal common law. Finding that WBEC’s failure to comply with California’s statutory claim procedure precluded a cause of action for a tax refund, the district court granted California’s motion for summary judgment in April, 1989.
 

 The question is whether the district court erred in refusing to consider the quasi-contract claim, and in holding that, in this case, only California law provides a remedy for the over payment of California sales and use taxes.
 

 STANDARD OF REVIEW
 

 The standard of review for a grant of summary judgment is
 
 de novo. Tzung v. State Farm Fire and Casualty Co.,
 
 873 F.2d 1338 (9th Cir.1989).
 

 SOVEREIGN IMMUNITY
 

 Although an appellate court normally addresses only those issues resolved below, the court may, in its discretion, review an issue “conceded or neglected below if the issue is purely one of law and the pertinent record has been fully developed, ... [or] when there are significant ques
 
 *1344
 
 tions of general impact.”
 
 In re Howell,
 
 731 F.2d 624, 626-27 (9th Cir.),
 
 cert. denied,
 
 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984) (citations omitted). Since issues of sovereign immunity pervade this case, we address them here.
 

 The United States claims a right to a refund based on California’s erroneous interpretations of its tax laws. Other than asserting in its complaint that the action was brought “to vindicate the sovereign rights and pecuniary interests of the United States,” the United States does not rely on any theories of sovereign immunity from the tax in question. Rather, the United States claims that, given the nature and terms of the contract, and WBEC’s duties and responsibilities under it, California tax laws simply do not apply to WBEC. The United States does not claim that the tax in question is unconstitutionally discriminatory, or even unconstitutional as applied to WBEC. As the district court stated in its order granting summary judgment, the United States “does not raise a constitutional claim, and, other than its assertion that it brings this suit as a claim under federal common law, it does not tender any federal question.”
 

 However, the U.S. alludes to sovereign immunity in its arguments on appeal. Without actually invoking the phrase “sovereign immunity,” and relying upon
 
 United States v. Independent School District No. 1,
 
 209 F.2d 578 (10th Cir.1954), the United States argues that when the federal government disburses funds, it is exercising a constitutional function, and that the right of the United States to a refund of an erroneous or illegal tax depends on its right to function free from improper state interference.
 

 The Supreme Court has addressed the potential sovereign immunity issue raised by this case, and concluded that “the limits on the immunity doctrine are ... as significant as the rule itself.”
 
 United States v. New Mexico,
 
 455 U.S. 720, 734, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580, 591 (1981). In
 
 New Mexico,
 
 the Court held that state sales and use taxes could be constitutionally applied to federal management contractors. Such a tax is constitutional as long as it is not imposed directly on the United States, or on a constituent part or instrumentality of the United States.
 
 New Mexico,
 
 455 U.S. at 735, 102 S.Ct. at 1383, 71 L.Ed.2d at 592. The Court found that the contractors in
 
 New Mexico
 
 were independent, and not constituent parts or instrumentalities of the United States.
 
 New Mexico,
 
 455 U.S. at 738, 102 S.Ct. at 1385, 71 L.Ed.2d at 594.
 

 Noting that it was “constitutionally irrelevant” that the United States reimbursed the contractors’ expenditures, including tax liabilities, or that title to goods purchased by the contractors passed immediately to the United States, the
 
 New Mexico
 
 Court held that:
 

 [Ijmmunity cannot be conferred simply because the state tax falls on the earnings of a contractor providing services to the Government. And where a use tax is involved, immunity cannot be conferred simply because the State is levying the tax on the use of federal property in private hands, even if the private entity is using the Government property to provide the United States with goods, or services. In such a situation the contractor’s use of the property “in connection with commercial activities carried on for profit,” is “a separate and distinct taxable activity.” [Ijmmunity cannot be conferred simply because the tax is paid with Government funds, [where] the contractor made expenditures under an advanced funding arrangement similar to the one involved here.
 

 New Mexico,
 
 455 U.S. at 734-35, 102 S.Ct. at 1382-83, 71 L.Ed.2d at 592 (citations omitted).
 

 The contractual relationship between WBEC and the United States was, in essential respects, the same as the contractual relationships in
 
 New Mexico.
 
 WBEC functioned as an independent contractor operating and managing a federal facility under an advanced funding arrangement. Title to all its purchases immediately passed to the United States. The United States’ efforts to characterize WBEC’s role and responsibilities as limited do not make WBEC any more a constituent part or in
 
 *1345
 
 strumentality of the United States than were the contractors in
 
 New Mexico. See New Mexico,
 
 455 U.S. at 736-37, 102 S.Ct. at 1383-84, 71 L.Ed.2d at 593-94. Moreover, we have previously found Cal.Rev. and T.Code § 6384 and Reg. 1521, as applied to a federal contractor, to be constitutional.
 
 In re Howell,
 
 731 F.2d at 629. Therefore, the sovereign immunity of the United States from direct state taxation does not extend to WBEC and cannot be invoked by the United States in this case.
 

 FEDERAL OR STATE LAW?
 

 Lacking a colorable constitutional challenge, the United States must find a cause of action elsewhere,
 
 i.e.,
 
 California law or, as the United States argues, federal common law. The issue of whether state or federal law governs is a question of law and is reviewable de novo.
 
 Cortese v. United States,
 
 782 F.2d 845, 849 (9th Cir.1986). Precedent in the Ninth Circuit requires justification for the initial choice of federal law or state law in cases where no clear body of federal common law applies.
 
 United States v. State of California,
 
 655 F.2d 914 (9th Cir.1980).
 

 Where there is no clear body of applicable federal common law, state law must be applied unless a “significant conflict between some federal policy or interest and the use of state law in the premises” is demonstrated.
 
 State of California,
 
 655 F.2d at 917, quoting
 
 Wallis v. Pan Am. Petroleum Corp.,
 
 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369, 373 (1966). As discussed above, the United States enjoys no sovereign immunity in this case. Thus, the preliminary issues to be resolved in this case are constitutional: 1) whether there exists a federal interest in controlling the applicable law; 2) whether that federal interest conflicts with the state interest in preserving its control over local concerns; and 3) whether the state law is hostile to a federal program.
 
 See Industrial Indemnity Insurance Co. v. United States,
 
 757 F.2d 982, 985 (9th Cir.1985).
 

 A.
 
 No federal interest or program
 

 In this case, no federal interest or program has been identified. However, relying upon
 
 United States v. Independent School District No. 1,
 
 209 F.2d 578 (10th Cir.1954), the United States argues that when the federal government disburses funds, it is exercising a constitutional function. However,
 
 Independent School District No. 1
 
 is distinguishable. In
 
 Independent School District No. 1,
 
 the United States brought an action to recover over-payments made to the Oklahoma School District under a community school lunch program. The Tenth Circuit reversed a district court judgment for defendants, holding that the federal government was entitled to recover the overpayments regardless of state procedural requirements. In the case at bar, the United States apparently implies that a federal interest is involved whenever the federal government disburses funds. However, it was undisputed in
 
 Independent School District No. 1
 
 that the federal government had disbursed the funds for the school lunch program in its exercise of constitutional functions or powers.
 
 See Independent School District No. 1,
 
 209 F.2d at 580. Because the school lunch program was a federal program, the disbursement was made “under the authority of federal law,” and the United States had an interest in the success of that program that conflicted with the use of Oklahoma’s law.
 

 The present case involves no similar federal program, interest, or policy. It does not follow that every time the federal government disburses funds it does so under authority of federal law. The appellant confuses the act of disbursement with the underlying authority for the disbursement. The mere act of disbursing federal funds does not rise to the level of a federal interest. Here, the United States was not acting “under the authority of federal law” nor “in the exercise of a constitutional function,” but instead was compelled by California law to disburse funds to pay state taxes. Since no federal program is involved, and since the disbursement of funds does not automatically give rise to a
 
 *1346
 
 federal interest, there is no federal interest to conflict with the use of state law.
 
 See United States v. State of California,
 
 655 F.2d 914 (9th Cir.1980).
 

 B.
 
 No applicable federal common law
 

 The next issue is whether there is a clear body of applicable federal common law. The law which the United States seeks to have applied to this case — a federal common law quasi-contract theory action for money had and received — is not clear. Unjust enrichment
 

 The cases cited by the United States to support its argument that it may maintain a quasi-contract action independent of state law involved classic cases of unjust enrichment. .
 
 See, e.g., United States v. Limbs,
 
 524 F.2d 799, 801 (9th Cir.1975) (refund sought for portion of federal workman’s compensation benefits paid for which defendant had received double recovery);
 
 United States v. DeKalb County,
 
 729 F.2d 738, 740 (11th Cir.1984) (U.S. mistakenly paid double assessments on the same property);
 
 City of New Orleans v. United States,
 
 371 F.2d 21, 29 (5th Cir.),
 
 cert. denied,
 
 387 U.S. 944, 87 S.Ct. 2076, 18 L.Ed.2d 1330,
 
 reh. denied,
 
 389 U.S. 890, 88 S.Ct. 19, 19 L.Ed.2d 201 (1967) (state law manipulation amounting to a “procedural trap” resulted in deprivation of a chance for the federal government to pursue its remedies before state time limitations had run.)
 

 At the heart of an action based on quasi-contract lies a claim of unjust enrichment and such quasi-contract liability is dictated by the needs of justice and fairness.
 
 United States v. Neidorf,
 
 522 F.2d 916, 918-19 and n. 5 (9th Cir.1975),
 
 cert. denied, Neidorf v. United States,
 
 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976);
 
 see also United States v. Limbs,
 
 524 F.2d at 801. . No such facts exist in this case.
 

 WBEC, backed throughout by the United States, had a fair chance to argue against the validity of the assessments in the administrative and state court proceedings. This case does not involve classic unjust enrichment such as simple overpayment. Instead, the United States’ unjust enrichment argument is posited upon the interpretation of a state-created exemption from a state created sales tax. Thus, as will be discussed below, compliance with state law claim filing procedures is a condition precedent to the filing of an action. Moreover, the United States’ federal common law argument is undermined by the fact that the United States seeks declaratory relief based entirely on the interpretation of California tax regulations. The district court did not err in denying equitable relief when it found that the facts of this case “simply do not give rise to a claim of ‘unjust enrichment’ sufficient to invoke the doctrine of quasi-contract.” Record at 23.
 

 C.
 
 28 U.S.C. § 2^15 and the quasi-contract claim
 

 Initially, the United States brought this action for declaratory relief, essentially, for a refund of monies paid to WBEC for the tax assessments. At a certain point after the commencement of the litigation, the United States changed its argument to a claim for a refund based on quasi-contract. This quasi-contract theory would allow the United States to take advantage of a six-year statute of limitations under 28 U.S.C. § 2415.
 

 However, 28 U.S.C. § 2415 does not permit the United States to bring a quasi-contract claim because section 2415 does not provide a cause of action. It merely provides for a six year time period during which the United States
 
 may
 
 sue under quasi-contract. We have held that, while the United States is not subject to state statutes of limitations when it seeks to assert an
 
 otherwise valid
 
 cause of action, the United States “must have become entitled to a claim and have acquired a cause of action before it comes under the umbrella of 28 U.S.C. § 2415.”
 
 United States v. Hartford Accident and Indemnity Co.,
 
 460 F.2d 17, 19 (9th Cir.),
 
 cert. denied
 
 409 U.S. 979, 93 S.Ct. 308, 34 L.Ed.2d 243 (1972) (failure to bring suit within California statutory time limit vitiated claim). Because of its failure to comply with California’s claim filing requirements, the United
 
 *1347
 
 States has not become entitled to a claim. Thus, section 2415 does not apply.
 

 The United States points out that the Supremacy Clause and policies protecting the federal treasury provide the United States with litigation advantages over other plaintiffs in enforcing its rights, such as freedom from state statutes of limitations and from the defense of laches. Although sovereign immunity normally exempts the United States from state statutes of limitations,
 
 United States v. John Hancock Mutual Ins. Co.,
 
 364 U.S. 301, 308, 81 S.Ct. 1, 5-6, 5 L.Ed.2d 1 (1960), when a claim procedure is a condition precedent to, or an integral element of, a state-created cause of action, the United States is not exempt from the time bar, even if a federal statute of limitations may otherwise apply.
 
 State of California,
 
 655 F.2d 914, 918 (9th Cir.1980).
 

 In the case at bar, the district court correctly found that the United States had no cause of action for a tax refund since it lacked an element necessary to the accrual of the cause — the United States failed to file suit within 90 days of the Board of Equalization’s denial of WBEC’s refund claim, as required by Cal.Rev. & T.Code § 6933. Although WBEC
 
 did
 
 file state court actions within 90 days of each adverse decision by the Board of Equalization, those actions were later dismissed without prejudice, the legal effect of such dismissal is as though the actions had never been filed.
 
 See Nolan v. Workers’ Compensation Appeals Board,
 
 70 Cal.App.3d 122, 128-29, 138 Cal.Rptr. 561, 564 (1977). We have, previously, recognized the effect of a dismissal without prejudice.
 
 See, Humphreys v. United States,
 
 272 F.2d 411 (9th Cir.1959) (after widow voluntarily dismissed without prejudice, a Federal Tort Claims Act suit was brought on account of husband’s death, and widow was denied reinstatement because statute of limitations had, by then, run). Thus, the 90-day periods following each administrative denial
 
 effectively
 
 ran without suit being filed, precluding a state cause of action for a refund.
 

 Although California courts have not characterized the 90-day limit of section 6933 as a condition precedent to the accrual of a cause of action, the failure to comply with the 90-day limit has been held to bar suit.
 
 Pacific Gas & Electric v. State Board of Equalization,
 
 134 Cal.App.2d 149, 285 P.2d 305 (1955),
 
 app. dismissed,
 
 350 U.S. 979, 76 S.Ct. 468, 100 L.Ed. 848 (1956). Moreover, California courts have held similar limitations to be conditions precedent to, or essential elements of, other causes of action.
 
 See State of California,
 
 655 F.2d at 918;
 
 United States v. Hartford Accident and Indemnity Co.,
 
 460 F.2d at 19. Since federal statutes of limitations become determinative only after the government acquires a cause of action, and since the United States never acquired a cause of action, 28 U.S.C. § 2415 does not apply.
 
 See State of California,
 
 655 F.2d 914 (9th Cir.1980). Thus, the precedent relied on by the district court amply supports its ruling that compliance with the 90-day limit is an element of the cause of action for a tax refund.
 
 State of California,
 
 655 F.2d at 918-19.
 

 Recently, in a case that is factually similar to the case at bar, the Eleventh Circuit reversed a summary judgment in favor of Broward County and held that the United States’ claim for a refund of tax payments sounded in quasi-contract.
 
 United States v. Broward County,
 
 901 F.2d 1005 (11th Cir.1990). The Eleventh Circuit held that the United States was not subject to the Florida 60-day claim filing deadline in spite of the fact that the Florida statute also created the right to contest the assessment. Argument to the contrary “presupposes that the United States must look to the state law for. the creation of its cause of action. The cause of action asserted by the federal government is not a state law judicial remedy or cause of action but is a federal common law cause of action in quasi-contract for money had and received. In these circumstances the state statute has no application to this action.”
 
 Broward County,
 
 901 F.2d at 1008-09.
 

 The Eleventh Circuit gave no reason for its conclusion and attempted to distinguish
 
 State of California,
 
 on the ground that
 
 *1348
 

 State of California
 
 involved a state cause of action rather than the federal quasi-contract cause of action. The only federal common law relied upon by the Eleventh Circuit was the common law action for money had and received. As discussed above, the common law action for money had and received is not applicable in this case. Just as there was no unjust enrichment in
 
 State of California,
 
 there was none in
 
 Broward County,
 
 and there is none in the case at bar.
 

 Furthermore, compliance with state claim filing procedures was a condition precedent to the filing of a court action in
 
 State of California.
 
 The Ninth Circuit found that the use of California’s claim filing law would not infringe upon any federal interest and rejected the federal government’s arguments that unique federal interests were indicated in 28 U.S.C. § 2415(b), the federal statute of limitations. “We find no indication in the legislative history of that statute
 
 ... of any federal policy or program
 
 which would be frustrated by requiring compliance with California’s more restrictive time requirements.”
 
 State of California,
 
 655 F.2d at 919 (emphasis added). The same condition precedent was present in
 
 Broward County.
 
 However, the Eleventh Circuit chose not to apply state law without explanation.
 

 An analysis of
 
 Broward County
 
 under the Ninth Circuit’s approach would have yielded a different holding. There was no conflict between any federal interest and the use of state law. The federal government had no interest, program, or policy that would have been compromised or frustrated by the use of Florida’s claim filing procedure. Furthermore, the law suit filing deadline would have created no difficulty for the federal government beyond encouraging efficiency and speed in the preparation of claims and litigation.
 
 See State of California.
 
 Had the Eleventh Circuit applied the Ninth Circuit’s approach in
 
 Bro-ward County,
 
 the Florida statute would have been applied.
 

 D.
 
 Conclusion
 

 The United States’ allusions to sovereign immunity are unfounded, and no federal interests or programs have been identified that would conflict with the use of California’s tax laws. Furthermore, there has been no showing of classic unjust enrichment that would justify the use of a federal common law claim for money had and received. The United States does not claim, and the district court did not find, any unfairness in the state administrative or judicial proceedings. Since there is no applicable federal common law and no conflict between federal policy and the use of the California tax law in this case, state law must be applied. As in
 
 State of California,
 
 the United States has failed to meet the claim filing requirements and, therefore, has not stated a cause of action.
 

 This case comes down to a tactical mistake. In directing WBEC to accept the settlement and dismiss the action without prejudice, the United States apparently did not appreciate fully the implications of its actions under California’s statutory tax refund claim procedures. However, this mistake does not, of itself, warrant equitable relief. The United States had its day in court. Equity does not now demand that the United States be given a second opportunity to prove that the tax assessment was erroneous.
 

 We affirm.