**NOVATO FIRE PROTECTION DISTRICT, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America; U.S. Coast Guard, Defendants–Appellees.**

No. 98–15441.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 1999.

Filed July 7, 1999.

Gregory A. Wedner, Bergman & Wedner, Los Angeles, CA; Richard V. Godino, Los Angeles CA; and George J. Silvestri, Jr., Novato, CA, for the appellant.

Mary Beth Uitti, United States Department of Justice, San Francisco, CA; Mark Angelo, Assistant United States Attorney; San Francisco, CA, for the defendants-appellees.

Clark H. Alsop, Best, Best & Krieger, Riverside, CA, for Amicus Curiae California Association of Local Agency Formation Commissions.

Before: WOOD,[1] THOMPSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, we must decide whether a detachment action was a legitimate exercise of local government powers, or an unconstitutional attempt to tax the United States. We conclude that the attempted detachment was an attempt to levy a tax on the United States, and therefore violated the Supremacy Clause. Accordingly, we affirm the district court.

## I

Beginning in 1931, the United States acquired, through purchase, donation and condemnation, portions of land in Northern California commonly known as Hamilton Field, upon which it built the Hamilton Air Force Base military facility ("the base"). *See State of California ex rel State Lands Comm'n v. United States*, 512 F.Supp. 36, 37–38 (N.D.Cal.1981). From

---

1. The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

the time it was built until it was decommissioned in 1974, the base provided its own first response fire protection.

With the termination of active Air Force operations, management of the structural facilities at Hamilton Field, including government housing, post exchange, commissary and gas stations, was transferred to the United States Navy. Hamilton Field's runways and air-support facilities were operated at various times by the United States Air Force and Army Reserves. Beginning in 1996, the United States Coast Guard, which had previously occupied some portions of the base for use by its Pacific Strike Team, also commenced management of some facilities at Hamilton Field.

Following the decommissioning of the base in 1974, the Air Force maintained only minimal fire protection at Hamilton Field, essentially limiting coverage to aeronautically-related fires. Because the base was left without structural fire protection, the Navy contracted with the Novato Fire Protection District ("District") for fire protection and emergency medical services for those portions of Hamilton Field managed by the Navy and the Coast Guard. The contract provided for the payment of a flat fee in the amount equivalent to the revenue that the District would have received if the Navy properties were assessed local property taxes. The contract has been annually renewed by the parties.

Concerned that the contractual arrangements might constitute an impermissible inter-governmental tax, the District commenced proceedings to detach Hamilton Field from the District, with the hope of providing fire protection services to Hamilton Field on an out-of-district contractual basis.[2] Thus, in November 1976, the District's Board of Commissioners ("District Board") adopted a resolution applying for detachment of Hamilton Field from the legal boundaries of the District. The stated purpose of the proposed detachment was to ensure that the District would continue to "receive compensation for any services it provided to the currently tax exempt properties."

In February 1977, the Local Agency Formation Commission of Marin County ("LAFCo")[3] passed a resolution approving the detachment proceedings and calling for an election to confirm or reject the decision of the District Board to detach Hamilton Field. On August 1, 1977, the District Board adopted a resolution formally initiating detachment proceedings, and setting August 17, 1977, as the date for a hearing on the proposed detachment. On August 15, 1977, the Navy notified the District Board that it objected to the proposed detachment. The Air Force lodged similar written protests in letters dated August 8,

**2.** At the time of this detachment action, the requisite procedures for such actions were codified at California Government Code sections 56000 through 56550 (West 1966). Detachment was defined at section 56038 as "the detachment, deannexation, exclusion, deletion or removal from a district of any portion of the territory of such district." Cal. Gov't Code § 56038 (West 1966).

**3.** LAFCo is an acronym generally used to refer to a California local agency formation commission. At the time of the detachment action the statutory powers of these agencies were codified in California Government Code sections 54773 through 54799.5 (West 1966). The purpose of these LAFCos was "the orderly development of local agencies," to which end they were vested with the power to "develop and determine the sphere of influence" of each California county. Cal. Gov't Code § 54774 (West 1966 & Supp.1976); see also Simi Valley Recreation and Park Dist. v. Local Agency Formation Commission of Ventura County, 51 Cal.App.3d 648, 124 Cal.Rptr. 635, 648–49 (1975) (interpreting, inter alia, section 54774 in delineating the authority of a LAFCo in a challenged detachment action). Thus, in California counties, local agency formation commissions were vested with the power to organize districts such as the fire protection district at issue in this case. Cal. Gov't Code § 54774 (West 1966 & Supp.1976).

The provisions controlling the formation and powers of LAFCos have been subject to substantial revision since the time of the detachment action, and are now codified at California Government Code sections 56325 through 56337 (West 1997 & Supp.1999).

and August 16, 1977. On August 17, 1977, the District Board conducted the public hearing, and passed and adopted a resolution in favor of the detachment action.

On August 26, 1977, LAFCo's Executive Officer provided a written analysis of the proposed detachment. This analysis reiterated the stated purpose of the detachment action, and indicated that the Air Force, Navy, and Government Service Administration opposed the action.

A single-tally election—one combining the votes taken both within and outside the area to be detached—was held on November 8, 1977. After the election, in which the detachment action was approved by a vote of 3949 "yes" votes to 943 "no" votes, the District Board adopted a resolution ordering Hamilton Field detached from the District on the basis of a majority vote. Subsequently, the detachment was recognized by LAFCo and by the California Secretary of State.

On October 8, 1996, after the District and the Navy were unable to agree on the terms of the contract for the District's provision of fire protection and emergency medical services to Hamilton Field, the District initiated this action by filing a complaint in the Superior Court of California for the County of Marin, seeking a judicial declaration as to the validity of the detachment action. Such a declaration would have effectively required the United States to continue to contract with the District for fire and emergency medical services.

The United States removed the case to the United States District Court for the Northern District of California, where it sought a judicial declaration that the District was required by state law to provide fire protection services to Hamilton Field. After the issue had been joined, the District and the United States filed cross-motions for summary judgment. The district court granted the United States' motion on the ground that the detachment action was invalid under California state law. The district court therefore also de-

nied the District's summary judgment motion. Judgment was entered on January 29, 1998, and the District timely appealed.

## II

With its decision in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), the Supreme Court first articulated the principle that the Supremacy Clause, United States Constitution, Article VI, clause 2, precludes a state from levying a tax on the operations of the United States. In *United States v. Allegheny County,* 322 U.S. 174, 176, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), the Supreme Court reaffirmed and expanded upon the principle that "possessions, institutions, and activities of the Federal Government itself in the absence of congressional consent are not subject to any form of state taxation." Although the broad scope of governmental tax immunity has been tailored to cover only taxes on instrumentalities "so closely connected with the government that the two cannot realistically be viewed as separate entities," *United States v. New Mexico,* 455 U.S. 720, 735, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982), the parties do not dispute that the federal occupants of Hamilton Field enjoy inter-governmental tax immunity.

■ Although Hamilton Field was always situated completely within the contours of the District's boundaries, the District never attempted to directly assess taxes from the United States. However, when the District assessed a fee equivalent to a theoretical property tax as a condition for providing fire and emergency medical services, its actions clearly ran afoul of the Supremacy Clause.

■ When analyzing whether a fee constitutes an impermissible tax, "we are not bound by the characterization given to a state tax by state courts or legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted." *Carpenter v. Shaw,* 280 U.S. 363, 367–68, 50 S.Ct.

121, 74 L.Ed. 478 (1930). When the a fee is imposed on the United States for the purpose of extracting by fee that which cannot be extracted by taxation, the imposition of that fee may violate the Supremacy Clause. *See United States v. City of Huntington,* 999 F.2d 71, 73 (4th Cir.1993).

This is not to say that the United States cannot be charged reasonable fees related to the cost of governmental services provided, such as payment for metered water usage. *See id.* However, the contractual fees that the District charged the government in exchange for continued fire and emergency medical protection were based not upon the actual cost of services provided to Hamilton Field, but rather upon the value of the property in question. The fee was calculated to be "an amount equivalent to the revenue the District would receive were the Navy on property tax roles." The assessed tax value of a property is not equivalent to the cost of services rendered to that property. Indeed, tax revenue may be allocated to unrelated government services. *See San Miguel Consolidated Fire Protection Dist. v. Davis,* 25 Cal.App.4th 134, 30 Cal.Rptr.2d 343 (1994) (upholding as constitutional a statute reallocating property tax revenue from fire protection districts to county educational revenue augmentation funds.)

Although this Circuit has never reached the question, the Fourth Circuit and the Court of Claims have found that the imposition of a flat fee such as the one employed by the District is unconstitutional. *See Folio v. City of Clarksburg,* 134 F.3d 1211, 1217 (4th Cir.1998); *City of Cincinnati v. United States,* 39 Fed. Cl. 271, 275–76 (Fed.Cl.1997), *aff'd by* 153 F.3d 1375 (Fed.Cir.1998). Furthermore, in *Huntington,* the Fourth Circuit concluded that fire protection was a core government service,

and that, consequently, the attempts by a municipality to charge for this and other such services were invalid. 999 F.2d at 74. Otherwise "virtually all of what are now considered taxes could be transmitted into user fees by the simple expedient of dividing what are generally accepted as taxes into constituent parts, e.g., a police fee." *Id.* Accordingly, we hold that the fees charged to the United States by the District for fire protection and emergency medical services clearly constituted an impermissible tax.

### III

■ Because we must look at the effect, not the form, of the local government action, *Allegheny County,* 322 U.S. at 184, 64 S.Ct. 908, we also conclude that the District's detachment violated the Supremacy Clause. The intent of the detachment action was to circumvent inter-governmental tax immunity by removing the District's pre-existing duty to provide core government services. We cannot allow a municipality to initiate a detachment action with the purpose of charging the federal government a flat fee for basic services that the municipality otherwise has a duty to provide. To do so would effectively give that municipality a method of assessing a property tax from the federal government in exchange for the provision of any and all basic services. This is not constitutionally permissible under the Supremacy Clause.

Decisive in this analysis is the fact that the District did, in fact, have a duty to provide the core services to the United States prior to the attempted detachment eaction. Fire protection districts were and are part of a comprehensive state program of fire protection, charged with the duty and responsibility of providing fire protection within the defined district boundaries.[4]

4. At the time of the action, California Health and Safety Code section 13821 provided: "The district *shall* have fire protection responsibility for the structures in the area." (Emphasis added.) When the statute was amended in 1987, the California legislature re-affirmed the duties of the fire protection district. *See* Cal. Health & Safety Code § 13811 (West 1994 & Supp.1999). The legislature also made findings as to the historic and continuing role of the fire protection district in California, providing:

At the time of the attempted detachment, a fire protection district was required to provide primary fire protection services to all entities in the district, even structures designated as in the State's area of responsibility. *See* Cal. Health & Safety Code § 13821 (West 1966 & Supp.1976).

■ When the District was formed, Hamilton Field was included within the district boundaries. Thus, the District had the obligation to provide fire protection and emergency medical services. The fact that the Air Force chose to maintain its own first response system for many years does not alter the District's legal duties.[5] In fact, during the period the Air Force provided a first response service, the District provided secondary response services. The District, of course, recognized its duty to provide services, and commenced the detachment procedure to relieve itself of this duty. Indeed, the District has been refreshingly candid in its aims. LAFCo's Executive Director noted in his analysis of detachment that the "federally owned lands are exempt from taxation" and that the District wished a contract that "generally provides for payment of an amount equivalent to the revenue the District would receive were the ... properties on the tax rolls."

> The Legislature finds and declares that the local provision of fire protection services, rescue services, emergency medical services, hazardous material emergency response services, ambulance services, and other services relating to the protection of lives and property is critical to the public peace, health, and safety of the state. Among the ways that local communities have provided for those services has been the creation of fire protection districts. Local control over the types, levels, and availability of these services is a long-standing tradition in California which the Legislature intends to retain. Recognizing that the state's communities have diverse needs and resources, it is the intent of the Legislature in enacting this part to provide a broad statutory authority for local officials. The Legislature encourages local communities and their officials to adapt the powers and

Given this acknowledgment of a preexisting duty to provide an essential government service, the District cannot now contrive to tax the United States through gerrymandering. There is a balance to be struck in ascertaining when local government action is, in fact, a disguised attempt to tax the United States. Courts must be careful not to intrude on the legitimate actions of local governments. However, under the unique circumstances of this case, it is clear that the local government action was purely designed to circumvent *McCulloch* and its progeny. As such, the detachment violated the Supremacy Clause.

## IV

■ We also reject the District's contention that the doctrines of estoppel and waiver bar the United States' challenge to the detachment action. These doctrines are equitable remedies. *See Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1362 (9th Cir. 1998). We therefore review the trial court's refusal to grant these remedies for an abuse of discretion. *See Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1313 (9th Cir.1997).

■ A party claiming estoppel against the government must demonstrate both

procedures in this part to meet their own circumstances and responsibilities. *Id.* at § 13801.

5. Although not binding, we note that the decisions of the Comptroller General also invoke this reasoning. In a ruling issued to the Administrator of the General Service Administration, 53 Comp. Gen. 410, 1973 WL 8803 (1973), the Comptroller General held that: "Where there existed a statutory duty of a municipality, fire district or county to render firefighting services to a property within its limits without cost to the owners of the property, such duty extended to protecting the property of the United States." *Id.* at *2. Because the fire protection district in that case had a statutory duty to provide the services in question, the Comptroller General concluded that there was no legal basis upon which to authorize payments for such service. *Id.*

that it detrimentally relied on the Government's conduct, and that it did so reasonably. *See Heckler v. Community Health Serv. of Crawford*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In this case, the district court determined that the District was required to show that "it is worse off than it would have been had the government insisted upon free fire protection from the start, and this it has not done." Citing *Heckler*, 467 U.S. at 62–62, 104 S.Ct. 2218, the district court indicated that the District's "inability to retain money it should never have received" is not a sufficient detriment. The court thereby determined that the government was not estopped from challenging the validity of the detachment and the future payments that the action would require. We agree. The district court did not abuse its discretion in refusing to apply the doctrine of estoppel in this case, and we affirm its conclusion.

■ The District also argues that the doctrine of waiver bars the United States' claim, because the Navy and Army made twenty years of uninterrupted contract payments, which stand as "conclusive evidence of intentional relinquishment of known rights" by the United States. However, the district court concluded that, because the detachment was invalid, and the District was therefore at all times obligated to provide free fire and emergency medical services to the area, the agents of the government who entered into these contracts were unauthorized to pay for the free service. *See In re 9–1–1 Emergency Number Fee, Hillborough County, Florida*, 66 Comp. Gen. 385, 1973 WL 8803, at *2 (1987) ("absent a tangible benefit and measurable value to the United States, there is no authority to pay any service charge"). The district court therefore concluded that the government had not waived its rights because it could not be bound by the illegal actions of its officers. *See United States v. Fowler*, 913 F.2d 1382, 1385–86 (9th Cir.1990). We agree, and find that the district court did not abuse its discretion in refusing to apply the doctrine of waiver.

## V

■ Because the detachment action was barred by the Supremacy Clause, we need not determine whether the action was procedurally deficient under California state law.[6] Nor is the constitutional challenge[7] to the detachment action barred by Calfornia's six month limitation period, as the United States is not bound by state statutes of limitations period when asserting a federally created right. *See United States v. Summerlin*, 310 U.S. 414, 417–18, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v. Dos Cabezas Corp.*, 995 F.2d

---

6. In this case, the district court also denied the District's motion for reconsideration, in which the District argued that the government's action was barred by California Government Code section 850 (West 1995) (providing public entities and employees with absolute immunity from injury resulting from a failure to provide fire protection). The denial was issued upon the grounds that the claim was not raised in its motion for summary judgment. A district court has discretion to decline to consider an issue raised for the first time in a motion for reconsideration. *Columbia Pictures Television v. Krypton Broad.*, 106 F.3d 284, 290 (9th Cir.1997), *rev'd on other grounds*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998). The district court relied upon the Seventh Circuit's decision in *Publisher's Resource, Inc. v. Walker Davis* in support of its decision not to reopen the case on the ground that the argument that was not raised in the District's initial motion for summary judgment. 762 F.2d 557, 561 (7th Cir.1985). We find that the district court did not abuse its discretion in refusing to reconsider the matter in light of this new argument. We also conclude that the District's failure to raise the issues in the summary judgment motions waives their right to do so on appeal. *Id.*

7. We need not, and do not, decide whether the United States' state statutory challenges are barred by California's statute of limitations. *See* Cal.Civ.Proc.Code § 349.1 (West 1982) (imposing six month statute of limitations for legal challenges to the validity of a district reorganization action).

1486, 1489 (9th Cir.1993); *United States v. California,* 932 F.2d 1346, 1351 (9th Cir. 1991), *aff'd on other grounds,* 507 U.S. 746, 113 S.Ct. 1784, 123 L.Ed.2d 528 (1993).

## VI

Because the detachment action in this case constituted a violation of the Sovereign Immunity Clause, the holding and order of the district court are AFFIRMED.