8    *Contship Containerlines*
*v. Howard Ind., Inc.*                    No. 01-4296

247 Mich. 267, 225 N.W. 511, 512 (1929)); *see also Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 458 (6th Cir. 2001) (distinguishing a quasi-contract from a contract implied in fact), *cert. denied*, 122 S.Ct. 921 (2002).

   The district court was not sitting in diversity jurisdiction but rather had original jurisdiction over this maritime action. Thus, we apply federal common law, which also recognizes quasi-contracts. *See United States v. California*, 932 F.2d at 1350.

   The undisputed facts viewed in the light most favorable to Howard are sufficient to establish the necessary elements of a quasi-contract. Howard Industries delivered its goods to Contship, and Contship transported those goods exactly as Howard Industries wished.[2] In doing so, Contship conferred a benefit on Howard Industries. It is clear that Contship did not behave opportunistically and seek out Howard Industries or trick Howard Industries into using its services, but rather behaved as any carrier would if a shipper delivered goods to it. Indeed, there is no dispute from Howard Industries as to the amount of shipping charges or whether the service was performed adequately. In light of these facts, Howard Industries' payments to Transworld were undertaken at its own risk. Thus, even if there is an issue of fact regarding whether there was an agreement between the parties, there is no need for a finder of fact to decide that issue as we believe the undisputed facts viewed most favorably to Howard clearly establish a quasi-contract.

### III

   For the foregoing reasons, the judgment of the district court is **affirmed**.

---

[2] The outcome might be different had Howard delivered the goods to freight-forwarder Transworld, and then Transworld subcontracted delivery to Contship. The facts alleged, however, cannot support such a finding.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0382P (6th Cir.)
File Name: 02a0382p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CONTSHIP CONTAINERLINES, INC.,

    *Plaintiff-Appellee,*

    *v.*

HOWARD INDUSTRIES, INC.,
    *Defendant-Appellant,*

TRANSWORLD FREIGHT FORWARDING, INC.,
    *Defendant.*

No. 01-4296

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00152—Edmund A. Sargus, Jr., District Judge.

Argued: October 3, 2002

Decided and Filed: November 4, 2002

Before: KENNEDY, NORRIS, and BATCHELDER, Circuit Judges.

---

**COUNSEL**

**ARGUED:**   David H. Starkey, METCALF, DUREN, MORRIS, STARKEY & WAID, Dublin, Ohio, for Appellant. Mark Jeffrey Sheriff, LUPER, SHERIFF & NEIDENTHAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  David H. Starkey, METCALF, DUREN, MORRIS, STARKEY & WAID, Dublin, Ohio, for Appellant.  Mark Jeffrey Sheriff, LUPER, SHERIFF & NEIDENTHAL, Columbus, Ohio, for Appellee.

---

**OPINION**

---

ALAN E. NORRIS, Circuit Judge.  Defendant Howard Industries, Inc. ("Howard Industries"), a laundry detergent producer, appeals a grant of summary judgment in favor of plaintiff Contship Containerlines, Inc. ("Contship"), a freight carrier, for shipping charges totaling $24,200.00 on three separate international shipments of detergent.  For the reasons set forth below, we affirm the judgment of the district court.

**I**

The key facts in the case and the positions of the parties were set forth by the district court as follows:

Contship is a maritime shipper and brings this action against Howard for payment of certain freight charges. Howard produces laundry detergent and is in the business of compounding or blending certain chemical products. The product at issue was shipped from Howard's plant in Houston, Texas to the Nation of Syria in February and March of 1999.

directly from its factory to Contship's vessels.  Nonetheless, delivery of the goods to Contship's vessels, with no prior dealings or other arrangements, does not establish that an agreement existed between the parties.  Thus, for the purposes of summary judgment, there is a genuine issue of material fact as to whether an agreement existed.  Because an agreement is a necessary element to a contract implied in fact under the district court's own statement of the law, summary judgment was improper on the theory of contract implied in fact.

However, the facts viewed in the light most favorable to Howard Industries nevertheless give rise to a contract implied in law.  It is a simple hornbook rule that a contract implied in fact must embody all the elements of an express contract, including an actual agreement between the parties.  Even when a "meeting of the minds" does not occur, however, a contract implied in law, sometimes referred to as a "quasi-contract," may exist based on principles of equity and to prevent unjust enrichment.  *See United States v. State of California*, 932 F.2d 1346, 1350 (9th Cir. 1991)  ("At the heart of an action based on quasi-contract lies a claim of unjust enrichment and such quasi-contract liability is dictated by the needs of justice and fairness.") *aff'd* 507 U.S. 746 (1993).

Applying Michigan law, we had occasion to draw a distinction between contracts implied in law and contracts implied in fact:

There are two kinds of implied contracts; one implied in fact and the other implied in law.  The first does not exist, unless the minds of the parties meet, by reason of words or conduct.  The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

*Murray Hill Publ'ns., Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 637 (6th Cir. 2001) (quoting *Cascaden v. Magryta*,

*Syria.* Nor is there any claim by Howard that the product shipped by Contship on behalf of Howard did not reach its ultimate destination or were not delivered in proper order.

*Contship Containerlines*, 2001 WL 1750749 at *4 -5 (emphasis added).

Howard agrees that the district court correctly stated the law of contracts implied in fact but argues instead that there is a genuine issue of fact regarding whether there was an agreement between the parties. An affidavit dated January 4, 2001 from James Howard stated that Howard Industries was unaware that any parties other than Transworld would be involved in shipping its product and that it was not aware of the existence of Contship nor did it have any contacts with Contship. This affidavit was sworn after Contship moved for summary judgement, and the district court noted that it could not be used to create a genuine issue of fact because it conflicted with James Howard's earlier affidavit . *Contship Containerlines,* 2001 WL 1750749 at *1 n.1.

Howard Industries argues that the December 1, 1999 affidavit does not support the district court's assertion that "Howard's own president [James Howard] swore that Howard delivered the goods to Contship's vessels, knowing and intending that the product be shipped to Syria." We agree that the district court's paraphrase of James Howard's statements imputes a mental state to Howard that is absent from the affidavit, which merely acknowledges that Howard Industries delivered the goods to Contship. Accepting, as we must, the facts as alleged by Howard Industries, we conclude for the purpose of summary judgment that the parties had no prior dealings and that Howard was unaware that Contship was the carrier.

Howard Industries' assertion that it did not know Contship was the carrier conflicts, of course, with the December 1999 affidavit that acknowledged that its goods were shipped

The essence of the parties dispute is easily summarized. According to Howard, and not contested by Contship, Howard contacted Transworld Freight Forwarding, Inc. ("Transworld"), a company which operated as a freight forwarder. Essentially, a freight forwarder assists a shipper in booking and preparing cargo for shipment. According to Howard, it paid Transworld for all of the payments alleged to be due Contship as set forth in the Complaint. Further, Howard contends that Transworld was not its agent and had no authority to incur a debt on its behalf with Contship. Finally, Howard claims that it at no time signed any documents or bills of lading by which it became obligated to pay Contship.

In reply, Contship contends that Howard was billed directly with the export invoices. The bills of lading listed Howard as liable for the payment of shipping costs. Even in the absence of an agency relationship between Transworld and Howard, Contship emphasizes that Howard actually delivered the goods to Contship's vessels. Howard's own president swore that Howard delivered its product to Contship's vessels in Houston Texas for shipment to Syria. While Contship does not dispute that Howard paid Transworld for the freight charges, Contship contends that Howard did so at its own peril and was obligated to insure payment to the actual shipper of the goods.

*Contship Containerlines, Inc. v. Howard Ind., Inc*., No. C2-00-152, 2001 WL 1750749, at *1 (S.D.Ohio Sept. 24, 2001) (citation omitted) (footnote omitted).

Originally, Contship sued both Transworld and Howard Industries but appears to have been unable to collect from Transworld. Typically, the obligations of the parties (the shipper, the carrier, and the freight-forwarder) are set forth in the bills of lading, which usually specify the product to be shipped, the cost of shipping, destinations, and the like. In

this case, the relevant bills of lading are unsigned. Howard Industries argues that the bills of lading do not constitute a binding contract, although they do not contest the shipping charges of $24,200.00 specified in the bills.

In granting Contship's motion for summary judgment, the district court accepted as true Howard's assertion that the bills of lading were not relevant, but found that the circumstances created a contract implied in fact.

## II

We review a grant of summary judgment de novo. *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F. 2d 1445, 1472 (6th Cir. 1988). A court may grant summary judgment only if there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In addition, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

In finding a contract implied in fact, the district court relied heavily on an affidavit dated December 1, 1999 and submitted in support of a motion to dismiss.[1] In the affidavit, James Howard, the president of Howard Industries, testified as follows:

This action concerns the non-payment of ocean freight for three shipments of chemical products shipped by Howard Industries, Inc. on board Plaintiff's [Contship's] vessels, which shipments were loaded to the vessels at the port of Houston, Texas in February and March, 1999

---

[1] Contship originally brought suit in a United States District Court in New Jersey. Howard moved for dismissal, alleging that it conducted no business in New Jersey and filed this affidavit in support. The parties eventually consented to remove the case to the United States District Court for the Southern District of Ohio.

for carriage to Latakia, Syria. These shipments moved from our Houston, Texas plant directly to the vessels in the port of Houston, Texas.

Relying heavily on Howard's admission that it delivered the detergent to Contship directly, the district court found that a contract implied in fact existed between the parties:

It is a fundamental tenet of contract law that a legally binding contract can be implied "from the circumstances and conduct of the parties." *Cooper v. Lakewood Eng'g & Mfg. Co.*, 45 F.3d 243, 246 (8th Cir. 1995). In "circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract," a contract implied in fact arises. *Luithly v. Cavalier Corporation; New Era Vending, Inc.*, 1999 U.S.App. LEXIS 10653, at *8 (6th Cir. 1999) *quoting Weatherly v. American Ag. Chem. Co.*, 65 S.W.2d 592, 598 (Tenn. App. 1933). "An implied-in-fact contract is one that is 'founded upon a meeting of minds which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Conglomerated Hosts, Ltd., v. Jepco, Inc.*, 1992 U.S.App. LEXIS 1672, at *16 (6th Cir. 1992) *quoting Parker v. Department of Health, Education, and Welfare*, 478 F.Supp. 1156, 1160 (M.D. Tenn. 1979). "Hence, the distinctive feature of an implied in fact contract is that it is implied from conduct and circumstances; aside from this there is no difference between an express contract and an implied contract." *Conglomerated Hosts,* 1992 U.S.App. at * 16-17.

The facts and circumstances surrounding the transaction between Howard and Contship resulted in a contract implied in fact. *Howard's own president swore that Howard delivered the goods to Contship's vessels, knowing and intending that the product be shipped to*